Donald LEE, Appellant,

v.

UNITED STATES, Appellee.

No. 10816.

District of Columbia Court of Appeals.

Argued Nov. 15, 1977.

Decided March 21, 1978.

V. Thomas Lankford, Washington, D. C., appointed by the court, for appellant.

Iraline G. Barnes, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and William D. Pease, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, KELLY, Associate Judge, and PAIR, Associate Judge, Retired.

NEWMAN, Chief Judge:

Tried by a jury and convicted of grand larceny, attempted unauthorized use of a motor vehicle, and petit larceny,[1] appellant contends on appeal that given his proper and timely discovery demand under Super. Ct.Cr.R. 16, the government's failure to disclose, until trial, the recovery of latent palm prints on an automobile in the vicinity of the larceny violates that rule as well as the due process requirements of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Finding no substantial prejudice to appellant's rights from the government's conceded violation of Rule 16 and no violation of *Brady,* we affirm.

In the early morning hours of February 13, 1975, the resident manager of an apartment house at 1800 R Street, N.W. was awakened by loud noises coming from the direction of the building's garage and summoned the police. In the garage, the manager and the police officers observed a broken lock on the garage door; cars jacked up; tires scattered over the garage floor; and jewelry, a stereo set, and additional tires piled inside one car, on the hood of which blood could be seen. Tracing blood spots on the floor to a storage closet off from the garage, the officers and the manager discovered appellant therein, bleeding from his wrist. He was arrested. A search of his person found some of the property which is the subject matter of his larceny convictions.

In a timely manner, appellant's trial counsel orally requested that the government disclose the name of the officer who dusted for fingerprints at the scene.[2] The Assistant United States Attorney assigned to the case responded that there was no fingerprint report in the file. Later that month, trial counsel made a written request for the name of the fingerprint expert who conducted the examination of the latent prints, and of the officer who lifted the latent prints, noting his belief that latent prints constituted *Brady* material. After first promising to supply these names, the government later informed trial counsel

---

1. The theft alleged in the grand larceny count was a separate and distinct theft from that in the petit larceny count, although they were properly joined in the same indictment. Super. Ct.Cr.R. 8(a).

2. The record is unclear as to whether appellant's counsel made an informal discovery request within 10 days of arraignment, as arguably was required by reading Super.Ct.Cr.R. 12(b), 16(a), and 47–I(c) together. *Rosser v.*

*United States,* D.C.App., 381 A.2d 598, 605 n.6 (1977). However, at a status hearing less than one month after arraignment, counsel did inform the court of his informal efforts to secure the palm print reports. We read the trial court's acquiescence in the defendant's attempts to secure informal discovery as an extension of the 10–day period as permitted in Rule 16.

that there had been no dusting for prints and thus no latent prints had been lifted.

On the first day of trial, the manager of the apartment building positively identified appellant as the man the police found hiding in the storage closet [3] and testified that the police had dusted for fingerprints. When appellant's motion for a mistrial was denied, the Assistant United States Attorney [4] stated that although dusting had occurred, and latent palm prints had been lifted, they were of no value since the government had no palm prints of appellant to use for comparison. After some scurrying, the government produced a report disclosing that two palm prints were found and lifted from the hood of one of the cars. Counsel again moved for a mistrial, arguing that such late disclosure prevented him from obtaining an expert who could conduct appropriate tests to properly evaluate the evidence. The motion was again denied.

The trial court offered counsel an option: either the court would suppress all print evidence or it would call a police department expert to make print comparisons between appellant's palm prints and the latent palm prints found at the scene. Under the trial judge's proposal, should the defendant choose the latter option, he would

be bound to place before the jury the print comparisons: "Now, you are bound by his results, but I will put that expert on the stand and ask him to compare. And if it does, whatever, if it comes off the automobile or wherever it comes from, this is it." Record at 222. When appellant, still contending for a mistrial, accepted the second option, the comparison prints were made, and the evidence was admitted. One of the two latent prints was positively identified as that of appellant. Cross-examination was limited to eliciting from the expert witness that the other of the two latent prints did not match the appellant's prints.

Appellant contends that the government's violations of Super.Ct.Cr.R. 16(a)(2) and 16(g) resulted in substantial prejudice, and therefore the trial court's refusal to grant a mistrial was reversible error.[5] Specifically, appellant argues that the government's negligence in failing to disclose the existence of print evidence until trial, despite repeated defense requests,[6] denied him the opportunity to refute the reliability of the print evidence either by calling his own experts or through extensive cross-examination of the prosecution's expert. He further argues that the trial court's mandate that the print evidence be placed be-

---

**3.** Appellant was also positively identified at trial by the two arresting police officers.

**4.** This Assistant United States Attorney was not the Assistant who had made the pretrial representations concerning discovery.

**5.** The trial occurred prior to November 1976, when the most recent amendments to Super.Ct. Cr.R. 16 took effect. Former R. 16(a)(2) reads:

Upon motion of a defendant the court may order the prosecutor to permit the defendant to inspect and copy or photograph any relevant . . . (2) results or reports . . . of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the prosecutor . . . . .

Appellant also relies on the former Rule 16(g):

If, subsequent to compliance with an order issued pursuant to this rule, and prior to or during trial, a party discovers additional material previously requested or ordered which

is subject to discovery or inspection under the rule, he shall promptly notify the other party or his attorney or the court of the existence of the additional material. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as it deems just under the circumstances.

The 1976 amendments provided only minor substantive changes to the rules herein applicable. Former Rule 16(a)(2) is included in Rule 16(a)(1)(D); the substance of former Rule 16(g) is now found in Rules 16(c) and 16(d)(2).

**6.** Defense counsel was anxious to receive information concerning the prints because he believed that any latent prints at the scene would not match Mr. Lee's prints.

fore the jury operated to destroy his primary defense—that someone else was the initial and principal offender. The government, conceding its violation of Rule 16, contends that its violation thereof and the actions of the trial court pertaining thereto did not substantially prejudice appellant's rights.

The purposes underlying the criminal discovery rules are clear. "Broad discovery contributes to the fair and efficient administration of criminal justice by providing the defendant with enough information to make an informed decision as to plea; by minimizing the undesirable effect of surprise at the trial, and by otherwise contributing to an accurate determination of the issue of guilt or innocence." Fed.R.Crim.P. 16, Advisory Comm. Note (1975). So too, mandatory pretrial disclosure to defense counsel of scientific tests and reports prepared by the government in connection with a particular case promotes fair trial processes by providing .sufficient time for the defense to retain its own experts to evaluate the reports or to prepare cross-examination of the government's experts. Moreover, such pretrial discovery enables a defendant to make independent tests, should he so desire. 8 Moore's Federal Practice ¶ 16.05(3), at 16–17 (2d ed. 1977).

It is clear that late disclosure in the instant case violated the requirements and purposes of Rule 16(a). *Rosser v. United States,* D.C.App., 381 A.2d 598 (1977). Moreover, the government's repeated failure to disclose, in the face of numerous requests, further violated its duty under Rule 16(g), which mandates disclosure of any additional material previously requested.

When confronted with these government violations, the trial court had discretion to select from among the sanctions provided in Rule 16(g) for failure to comply with discovery. *United States v. Saitta,* 443 F.2d 830 (5th Cir.), *cert. denied,* 404 U.S. 938, 92 S.Ct. 269, 30 L.Ed.2d 250 (1971); *United States v. Kelly,* 420 F.2d 26 (2d Cir. 1969); *Hansen v. United States,* 393 F.2d 763 (8th Cir.), *cert. denied,* 393 U.S. 833, 89 S.Ct. 103,

21 L.Ed.2d 103 (1968). The court could have ordered immediate discovery from the date the violation became clear, with no mandatory admission into evidence of the discoverable material. It also could have granted a continuance in the trial to permit the defense sufficient time to analyze the palm print evidence and determine whether or not such evidence could be useful to the defendant. Further, the court could have prohibited the government from introducing the palm print evidence, thereby eliminating any potential benefit to the government from its pretrial omissions. *See* Super.Ct.Cr.R. 16(g).

Instead, the trial court proceeded under the fourth option presented in Rule 16(g)—that which permits the court to issue "such other order as it deems just under the circumstances." Under the authority of that provision the trial court fashioned its "sanction" for the government's Rule 16 violation—a short recess during which comparison of palm prints of the appellant were taken, followed by mandatory disclosure to the jury of the results of these palm print comparison tests.

In fashioning sanctions for failure to make proper disclosure under Rule 16, among the factors which the trial court must consider and weigh are: (1) the reasons for the nondisclosure, *see United States v. Hauff,* 473 F.2d 1350 (7th Cir.), *cert. denied,* 412 U.S. 907, 93 S.Ct. 2299, 36 L.Ed.2d 972 (1973); (2) the impact of the nondisclosure on the trial of the particular case, *see United States v. Kelly, supra ;* and (3) the impact of a particular sanction on the proper administration of justice in general, *see, e. g., United States v. Lewis,* 167 U.S.App.D.C. 232, 511 F.2d 798 (1975); *United States v. Padrone,* 406 F.2d 560 (2d Cir. 1969). *Cf. United States v. Consolidated Laundries Corp.,* 291 F.2d 563 (2d Cir. 1961).

Considering these factors, and the trial court's obvious recognition of the government's inexcusable neglect, we find that the sanction utilized by the trial court in the case *sub judice* was not "just under

the circumstances." The option provided appellant served neither to redress the conceded negligence of the government nor to deter it in the future. We hold that the trial court thereby abused its discretion in prescribing the sanction it did.

 Having so determined, we turn next to the issue of prejudice, for not every error by the trial court in applying sanctions under Rule 16 requires reversal. It is only where such error is substantially prejudicial to an appellant's rights that reversal is justified. *United States v. Arcentales*, 532 F.2d 1046 (5th Cir. 1976); *Hansen v. United States, supra.* The overwhelming strength of the government's case, coupled with the fact that the government could have properly obtained exemplars of appellant's palm prints by court order, *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), lead us to conclude beyond a reasonable doubt that there was no substantial prejudice to appellant's rights and that the error was harmless. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).[7]

Appellant also contends that the government's failure to produce in a timely fashion the repeatedly-requested prints violated his due process rights as explicated in *Brady v. Maryland, supra.* Appellant asserts that although one of the palm prints was shown to be his, the fact that the other palm print was not identified constituted exculpatory matter within the meaning of *Brady.* Given his timely and specific pretrial demand, we test his contentions by the principles of *Brady* (whether the nondisclosed evidence was material, favorable to the accused, and might have affected the outcome of the trial) rather than the test applicable where only a general demand or no demand is made, *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (whether the omitted evidence creates a reasonable doubt in the mind of the court which otherwise would not exist).

Applying the *Brady* test, appellant's contentions must be rejected, for there is no showing that the second palm print was in any way exculpatory. Appellant argues that if proper pretrial disclosure had been made, exemplars could have been obtained of the palm prints of the victim from whose car the latent prints were lifted. If these prints did not match the second latent print, so appellant's argument goes, his defense that persons other than he were involved would have been buttressed. Since automobiles are generally exposed to public contact in the normal course of their use, the fact of the presence on the car of an unidentified palm print of someone other than appellant and the owner would be of doubtful relevance and evidentiary materiality to the issue of the guilt or innocence of this appellant. Clearly, it would not tend to exculpate him in light of the positive identification of his palm print as the other latent print lifted from the car. In short, the simple answer to appellant's argument is that under the circumstances disclosed by the evidence, even proof that someone else was involved in the theft would not have tended to prove that he was not.

*Affirmed.*

---

7. We note that the record fails to disclose any request of the court by trial counsel to have the complaining witness' palm prints taken by the government's expert and compared with the latent lifts. While this in no way excuses the government's failure to comply properly with Rule 16 discovery demands, it is a factor we deem appropriate to consider in evaluating the issue of whether substantial prejudice flowed from the government's violation of its duty.