467 A.2d 706 (1983)
In the Matter of C.L.W., Appellant.
No. 82-959.
District of Columbia Court of Appeals.
Argued May 25, 1983.
Decided August 22, 1983.
As Amended December 1, 1983.
*707 Deborah Sines, appointed by the court, was on the briefs for appellant. George H. Kendall, Washington, D.C., was on the initial brief for appellant.
Leo N. Gorman, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellee.
Before KERN and BELSON, Associate Judges, and PAIR, Associate Judge, Retired.
PAIR, Associate Judge, Retired:
After a factfinding hearing in the Family Division of the Superior Court as provided by D.C.Code § 16-2317 (1981), C.L.W., a child, (appellant), was found involved in the offenses of felony murder (robbery), D.C. Code § 22-2401 (1981); armed robbery, D.C.Code §§ 22-2901, -3202 (1981); and assault with intent to kill while armed, D.C. Code §§ 22-501, -3202 (1981). Consequently, appellant was adjudged a delinquent and upon completion of the predisposition study and report required by D.C.Code § 16-2319 (1981), he was committed, pursuant to D.C. Code § 16-2320(e) (1981), to the custody of the Social Rehabilitation Administration for a period not to exceed two years.
At the factfinding hearing on February 23, 1982, evidence was adduced from which the trial judge could have found that at or about 1:00 a.m. on August 24, 1981, Cornell Cole, one of the complainants, drove his automobile into a parking lot at the rear of 904 Varney Street, S.E. Seated to his right was a man later identified as Gerald Lynch. Shortly thereafter, several persons approached the car  at least two on the driver's side and one on the passenger's side. One of the persons on the driver's side, later identified as C.L.W. (appellant), yanked open the door, pulled Cornell Cole from the car and at gunpoint robbed him of his watch and money. During the course of the assault and robbery, C.L.W. shot Cole in the leg.
At about the same time, a male, later identified as J.R.C., opened the door on the passenger's side and pointing a gun at Lynch, ordered him from the car. Lynch resisted and struck J.R.C. in the face with his fist. J.R.C. then stepped back several feet and fired one shot into the body of Lynch which caused his death.[1]
Sometime thereafter, the police responded to the scene and found Lynch unconscious on the front seat of the car. Cornell Cole, having returned to the scene of the *708 crime, was transported to a hospital and treated for his wound. Lynch was also transported to a hospital where he was pronounced dead on arrival. Cole was later interviewed by police but apparently was unable to give more than a general account of the occurrence and description of the participants in the criminal enterprise.
On or about October 2, 1981, the police, being informed by an eyewitness of the facts and circumstances surrounding the August 24, 1981, incidents in the parking lot, executed an affidavit upon the basis of which an order was made for the custody of C.L.W. and J.R.C.
After his arrest, C.L.W. was taken to police headquarters, and having first been fully informed of his Miranda rights,[2] confessed that on August 24, 1981, while armed with a gun, he assaulted and robbed Cornell Cole. He stated to the police that his purpose in making the statement was "to beat my charge."[3]
On this appeal which followed the adjudication and disposition of C.L.W., it is contended that (1) the arrest was without probable cause; (2) the confession should have been suppressed (a) as the fruit of an illegal arrest, and (b) as having been obtained in violation of appellant's Fifth and Sixth Amendment rights; (3) the court erred in refusing to declare a mistrial when it appeared that the government failed to disclose pretrial material allegedly required by the doctrine of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and (4) the evidence was insufficient to support the adjudication.[4] Finding no reversible error, we affirm.
As to appellant's first and second contentions that the custody order was predicated upon a deficient supporting affidavit, and that the confession should have been suppressed as the fruit of an illegal arrest, and as having been obtained in violation of the Fifth and Sixth Amendments, we find no merit.
Appellant was arrested on a custody order which was issued pursuant to the supporting affidavit of Officer Warren J. Donald which related information given to him by an eyewitness informant. The Supreme Court in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), articulated a two-prong test for assessing probable cause in a supporting affidavit situation. This test requires the government to establish by sufficient evidence "(1) that the informant had a sound basis for his knowledge of the particular, reported criminal activity, and (2) that the informant himself is a truthful person." Rutledge v. United States, 392 A.2d 1062, 1065 (D.C.1978). Here, the informant was an eyewitness and therefore had a sound basis for his knowledge of the reported criminal activity. District of Columbia v. M.E.K., 407 A.2d 655, 657 (D.C.1979). Evidence of the informant's truthfulness was apparent since much of the information provided had already been confirmed by the police investigation of the incident. Rutledge v. United States, supra, 392 A.2d at 1066. Furthermore, the informant who had known appellant for six years, provided detailed information which was self-corroborating. See United States v. Banks, 539 F.2d 14, 17 (9th Cir.) cert. denied, 429 U.S. 1024, 97 S.Ct. 644, 50 L.Ed.2d 626 (1976). Appellant was therefore properly arrested on the basis of a valid custody order from which it must follow that his confession should not have *709 been suppressed as the fruit of an illegal arrest.

II
Appellant also contends that the trial judge erred in refusing to suppress his confession for the reason that prior thereto he did not make a knowing and intelligent waiver of his Miranda rights: the right to remain silent and the right to counsel. We disagree.
What appears from the record is that immediately following his arrest, appellant was advised of his Miranda rights. Approximately one hour later, in the interrogation room, Detective Robert Jackson read the PD-47 form aloud to appellant and then gave him the rights card to read. Appellant looked at the card and replied affirmatively to all the questions on the back of the card. Detective Jackson then took a statement from appellant and when near its completion, he discovered that appellant had reading difficulties, another detective read the rights card aloud. At the hearing on the motion to suppress appellant's confession, the government called a clinical psychologist, Dr. Evelyn Schaefer, who testified that appellant was a fifteen year old male with an I.Q. of 74 at the time of his arrest. Dr. Schaefer stated that despite appellant's learning and reading difficulties he could understand and reply to the questions on the back of the PD-47 rights card if the warnings were read to him at least once. She also stated that repeated exposure to such warnings and questions on the PD-47 form would improve appellant's understanding of his Miranda rights. On cross-examination Dr. Schaefer stated that while an I.Q. of 74 was not within the retarded range, someone with that I.Q. could have learning disabilities which might result in problems in understanding certain words on a PD-47 rights card. Appellant, however, presented no testimony, expert or otherwise, to show that he was unable to understand what his rights were.
Appellant represents that he was handcuffed to the desk while being interrogated; that none of the officers attempted to contact his mother after his arrest; and that from the time of his arrest at 11:00 p.m. to the taking of his statement at 1:00 a.m., he neither slept nor ate anything. Whatever view may be taken of this representation, made for the first time on appeal, we must uphold the trial court's factual finding that appellant knowingly and intelligently waived his Miranda rights if there is substantial evidence in the record to support such findings. See In re M.D.J., 346 A.2d 733, 735 (D.C.1975).
Despite appellant's low I.Q. and the circumstances surrounding the taking of his statement, the record indicates that there was substantial evidence to support the trial court's findings. At the time appellant was questioned, he was four days short of his 16th birthday. After being advised of his rights, he stated both orally and in writing that he understood what his rights were. He then made a written waiver of his rights prior to giving a statement to the police. No doubt, his understanding of his rights was further enhanced by his experiences after numerous arrests in the past. In any event, at no time during this encounter with the police did he show any signs of emotional disturbance, or request that his mother or an attorney be present, or did he at any time indicate that he wanted to stop answering questions. In sum, there is no indication in the record that appellant was coerced into or promised anything for his statement. Significantly enough, appellant stated to the police that he was talking to them in an effort to "beat my charge." We hold therefore that there was a sound base in the evidence for the trial court's finding that appellant knowingly and intelligently waived his right to remain silent and his right to counsel.[5]

*710 III
Appellant contends next that he did not receive a fair trial because the government withheld specifically requested "Brady material." Brady v. Maryland, supra, 373 U.S. at 83, 83 S.Ct. 1194; see also Lewis v. United States, 393 A.2d 109, 114 (D.C.1978), aff'd. after rehearing, 408 A.2d 303 (D.C. 1979). We cannot agree.
It is true that during a pretrial discovery conference with the government appellant made a specific request for information concerning other persons who might have been involved in the robbery and shootings with which appellant was charged. The government did not furnish any such information pretrial. Midtrial, the government released a Jencks[6] packet to appellant's counsel which included a police investigation report. Upon review of that report, appellant moved for a mistrial on the basis that the information contained therein was Brady material. The trial judge elected to defer disposition of the motion until after trial, when he ruled that although the report was Brady material, appellant was not prejudiced by its non-disclosure before trial. The report in question reads as follows:
RUNNING RESUME
MONDAY, SEPTEMBER 28, 1981: 1500-2300 TOUR OF DUTY (DAY OFF)
On the above date the undersigned Detective met with the [name, address and telephone number of informant]. Mr. [] related the following information to the undersigned, [C.L.W. and co-respondent] were the persons responsible for the death of decedent [Gerald Lynch]. He related that he knows because [C.L.W.] told him about it. He stated, that David Jeter was there at the time of the murder and that Jeter was the one that gave the guns to [C.L.W. and co-respondent]. [] related that he knows the aforementioned as Jeter told him. [] related that Robert or Russell Holtzclaw was also involved but he did not do any of the shooting. [] related that Jeter told him that when he gave the guns to [C.L.W. and co-respondent] that he did not know that they were going to stick up no one. [] related that he has known [C.L.W.], Jeter and Holtzclaw for more than one year and he ID the following photo's: [Photographs of Russell Holtzclaw, David Jeter, and C.L.W.].
[] related that he will not testify in court that he was relating the information to the undersigned as he needed money but there is no way that he will go to any court proceedings. The undersigned advised him that he would check out the information and if it was correct the undersigned would obtain money for him from the Police Department.
The undersigned responded to 3705 Silver Park Drive, Apartment Number 301 to have the other victim in this case (Cornell Cole) view a group of photo's. No one answered knocking at the door. (Emphasis added).
Assuming arguendo that the report is Brady material since, as the trial judge ruled, it "may have tended to exculpate [C.L.W.] when viewed from a pretrial perspective in light of then available evidence in the case." Nevertheless we are unable to conclude that there was constitutional error in the trial court's refusal to declare a mistrial because of the government's non-disclosure.
In Lewis v. United States, supra, 393 A.2d at 114, we defined Brady material as "exculpatory information, material to a defendant's guilt or punishment, which the government knew about but failed to disclose to the defendant in time for trial." *711 Because the report indicated that others were involved in the criminal activity, the trial court determined that the information contained therein may have tended to exculpate appellant. Having determined that the police report withheld by the government was Brady material, the trial court then considered whether appellant was prejudiced by the non-disclosure. Two areas of possible prejudice were identified. The first was contingent upon the government's introduction of the report into evidence, but since the report was not so introduced, appellant was not prejudiced in that respect. The second area of concern concentrated on appellant's inability to make use of the information relating to Jeter and Holtzclaw in preparing and presenting his defense.
The record discloses that appellant's counsel interviewed Holtzclaw during his investigation and that during the cross-examination of a government's witness, before disclosure, attempted to establish that Jeter and Holtzclaw were present at the scene of the crime. Because of those actions by appellant's counsel, the trial court concluded that appellant suffered no prejudice since he knew both the identity and involvement of Jeter and Holtzclaw, and thus, was already in a position to discover any favorable evidence to be culled from the roles in the criminal activity that they played.
In passing after trial on appellant's motion for mistrial, the trial court viewed the police report first from a pretrial perspective and then having determined that the report was Brady material, viewed it from a post-trial perspective, applying the "material to outcome" test to determine the effect, if any, on appellant of the non-disclosure. The "material to outcome" test requires that the evidence might have affected the outcome of the trial in order to establish constitutional error. United States v. Agurs, 427 U.S. 97, 104, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). This test, or post-trial perspective, is the correct standard to apply in those cases that involve a discovery during or after a trial, that Brady material was not disclosed to the accused.[7]Id. at 108, 96 S.Ct. at 2399.
Thus, it seems too clear for further discussion that, assuming again arguendo that the report was Brady material, appellant was clearly not prejudiced by the government's failure to disclose the material before trial. Appellant, perhaps the best informed person in the criminal enterprise, knew both the identity of and the involvement of Jeter and Holtzclaw. Moreover, appellant's counsel interviewed Holtzclaw before trial and during his cross-examination of a government witness sought to place Jeter and Holtzclaw at the scene of the crime.
We are, therefore, unpersuaded that the non-disclosure of the police report had any materiality whatsoever on the issue of guilt or punishment. Moore v. Illinois, supra, 408 U.S. at 786, 92 S.Ct. at 2564; Lee v. United States, 385 A.2d 159 (D.C.App.1978). Thus, in deciding whether the non-disclosure of the material resulted in the denial of a fair trial, we have, as did the trial court, analyzed the issue in the context of all the evidence and proceedings at trial, i.e., the entire record. Lewis v. United States, supra, 408 A.2d at 306. The trial judge, as trier of both the law and facts, was uniquely qualified to assess the evidence and proceedings and make a judgment respecting the Brady issue and the effect, if any, of non-disclosure. Compelled to accord his judgment due deference, Nelson-Bey v. Robinson, 408 A.2d 999, 1002 (D.C.1979), we conclude that there was no error requiring reversal.
Affirmed.
NOTES
[1] J.R.C., together with C.L.W., was charged with the felony murder of George Lynch and the other offenses. At the close of the evidence, the court was unable to find beyond a reasonable doubt that J.R.C. was involved in any of the offenses.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] Prior to trial C.L.W. moved to suppress his confession on Fifth and Sixth Amendment grounds. The motion was, after a hearing, denied. C.L.W. did not testify at the hearing on the motion, nor did he testify or offer evidence at the factfinding hearing which followed.
[4] Although the trial judge was able to find beyond a reasonable doubt that C.L.W. was involved in the felony murder of George Lynch, he was unable to so find with respect to the charge of assault upon Lynch with a dangerous weapon.
[5] Appellant also asserts that had his confession been suppressed, there would have been insufficient evidence to support his conviction. In light of our decision that the confession was properly admitted into evidence, and viewing the evidence in light most favorable to the government, the record supports the finding of appellant's guilt of the felony murder of Gerald Lynch which occurred during the armed assault and robbery of Cornell Cole. Saunders v. United States, 317 A.2d 867, 868 (D.C.1974); see also Waller v. United States, 389 A.2d 801, 807 (D.C.1978), appeal dismissed, 446 U.S. 901, 100 S.Ct. 1824, 64 L.Ed.2d 253 (1980).
[6] Jencks Act, 18 U.S.C. § 3500 (1976).
[7] Because the Brady issue did not arise until mid-trial when the "Running Resume" was produced, the trial judge was not required to determine at that time whether its suppression by the government violated due process within the purview of Brady v. Maryland, supra, 373 U.S. at 83, 83 S.Ct. 1194. Put another way, the trial judge was not at that time required to rule upon the motion for mistrial by application of the "tends to exculpate" standard articulated in Brady v. Maryland, supra, 373 U.S. at 88, 83 S.Ct. at 1197. That standard is to be applied to determine whether disclosure was required, not whether failure to disclose was prejudicial. The "tends to exculpate" standard is premised on the view that "due process requires pretrial (or at least at trial) disclosure, upon a specific request of evidence material to guilt or punishment." Moore v. Illinois, 408 U.S. 786, 794, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706 (1972); Brady v. Maryland, supra, 373 U.S. at 86-87, 83 S.Ct. at 1196; Lewis v. United States, supra, 408 A.2d 303, 306 (D.C.1979).