Adrian Tyrell THOMPSON, Appellant,

v.

UNITED STATES, Appellee.

No. 10–CF–401.

District of Columbia Court of Appeals.

Argued March 22, 2012.

Decided June 14, 2012.

Lee R. Goebes, Public Defender Service, argued the cause for appellant. James Klein, Public Defender Service, and Corinne Beckwith, Public Defender Service at the time, were on the brief for appellant.

Kristina L. Ament, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, and Roy W. McLeese III, Elizabeth Trosman, Erik M. Kenerson, and Ann K.H. Simon,

Assistant United States Attorneys, were on the brief, for appellee.

Before FISHER and THOMPSON, Associate Judges, and SCHWELB, Senior Judge.

FISHER, Associate Judge:

Following a jury trial, appellant Adrian Thompson was convicted of carrying a pistol without a license,[1] possession of an unregistered firearm,[2] and unlawful possession of ammunition.[3] On appeal, he claims that his due process rights were violated because the prosecution discovered, during trial, that its witness at the preliminary hearing had testified incorrectly but failed to disclose that fact until after appellant had called the witness in his defense. Concluding that the trial court did not abuse its discretion in denying appellant's motion for a mistrial, we affirm.

## I. Factual and Procedural Background

On February 17, 2009, a Metropolitan Police Department bicycle unit was on patrol when appellant Adrian Thompson, who was riding a bicycle in their direction, made what appeared to the officers to be an evasive turn into an alley to avoid contact with the police. Officer Greg Nagurka followed appellant into the alley and saw him toss a shiny silver object *over* a wrought iron fence into the front yard of a house. Upon investigation, Officer Nagurka discovered a silver .38 caliber revolver lying in the front yard in the same area where he had seen appellant throw the object.

At a jury trial in December 2009, defense counsel attempted to impeach Officer

Nagurka by calling his supervising officer, Sergeant Evans, as a witness. Evans had not seen how the gun got into the front yard. However, three days after appellant's arrest, Sergeant Evans had testified at the preliminary hearing. There, he recounted that Officer Nagurka had told him that appellant had slid the firearm *underneath* the fence. Nevertheless, when called by the defense at trial, Evans testified that Nagurka "stated that the defendant had thrown the—a silver object *over* a fence into the yard...." Surprised by this testimony, defense counsel impeached Evans with the transcript of the preliminary hearing. The sergeant's prior testimony was admitted as substantive evidence.

On cross-examination by the prosecutor, Sergeant Evans explained that his testimony at the preliminary hearing had been a mistake. At the time, he had been preparing for trial in another case of gun possession stemming from an arrest made by the same bicycle unit, and he had mistakenly testified about the facts of that case instead.

During a sidebar conference, the prosecutor revealed that his curiosity had been piqued on the previous day when defense counsel seemed to be laying the foundation for later impeachment. After court had recessed for the day, he spoke with the two officers to determine why defense counsel had questioned Officer Nagurka about whether he "told Sergeant Evans ... that Mr. Thompson put the gun underneath the fence." Although Officer Nagurka denied having made that statement, he suggested that Sergeant Evans might have been thinking of another case in which a gun had been slid underneath a fence. The prosecutor then found the po-

---

1. D.C.Code § 22–4504(a) (2001).

2. D.C.Code § 7–2502.01 (2001).

3. D.C.Code § 7–2506.01(3) (2001).

lice paperwork from that other case and showed it to Evans, who realized that he had testified about the wrong case at the preliminary hearing.

At the end of Sergeant Evans' testimony, appellant moved for a mistrial. He complained that the government had discovered that Evans had "testified in a prior proceeding and that that testimony was not about this case," but it did not disclose that fact to defense counsel. When the court asked what counsel would have done differently if she had known this information sooner, counsel stated: "I may not have called that witness...." The court denied the request for a mistrial, finding that defense counsel had "made ample use" of Sergeant Evans' inconsistent testimony and that the sergeant's explanation for the inconsistency was not "overly persuasive." The court also was skeptical that defense counsel would have chosen not to call Sergeant Evans.

## II. Legal Analysis

### A. The Government's Obligation to Correct False Testimony

■■■ Consistent with the Due Process Clause, the government "may not knowingly use false evidence, including false testimony, to obtain a tainted conviction," nor may it allow such testimony, though not solicited by the government, "to go uncorrected when it appears." *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *see also Woodall v.*

*United States*, 842 A.2d 690, 696 (D.C. 2004) (" 'A prosecutor may not knowingly ... permit evidence, known to be false [or misleading], to go uncorrected' before the trier of fact."). A conviction obtained by the knowing use of false testimony is "fundamentally unfair," *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), and undermines public faith in the integrity of judicial proceedings.[4]

■ Requiring the government to correct false testimony serves to uphold the "truth-seeking function of the trial process," *id.* at 104, by "ensur[ing] [that the] jury is not misled by falsehoods," *Woodall*, 842 A.2d at 697 (citing *United States v. Meinster*, 619 F.2d 1041, 1044 (4th Cir. 1980)). Thus, although this doctrine protects a defendant's due process right to a fair trial, it does so in a particular manner—by providing the fact-finder (whether a judge or jury) with truthful testimony.

The government claims that it fulfilled its obligations in this case because it "did not allow [Sergeant Evans' testimony] to go 'uncorrected' at trial." Rather, Sergeant Evans testified truthfully on both direct and cross-examination and was impeached by the defense with his mistaken testimony. The jury was therefore presented with a full explanation of the contradiction between Officer Nagurka's trial testimony and the preliminary hearing testimony of Sergeant Evans—including Sergeant Evans' account of why his testimony

---

4. There is no suggestion from either party that Sergeant Evans committed perjury at the preliminary hearing, and we do not intend to imply otherwise. It is well recognized that the government's obligation to correct "false" testimony also applies to mistaken testimony. *See Hayes v. Brown*, 399 F.3d 972, 981 (9th Cir.2005) (en banc) ("There is nothing in *Napue*, its predecessors, or its progeny, to suggest that the Constitution protects defendants only against the knowing use of perjured testi-mony. Due process protects defendants against the knowing use of any false evidence by the State...."); *United States v. McClintic*, 570 F.2d 685, 692 n. 13 (8th Cir.1978) (when "the witness' answer, although made in good faith, is untrue, the Government's obligation to correct that statement is as compelling as it is in a situation where the Government knows that the witness is intentionally committing perjury") (quoting *United States v. Harris*, 498 F.2d 1164, 1169 (3rd Cir.1974)).

had changed—and could weigh that information during its deliberations. *See United States v. Thomas,* 987 F.2d 1298, 1301 (7th Cir.1993) ("[T]he court allowed the government ... to lay all of [the witness's] relevant testimony—both favorable and unfavorable—before the jury. Far from being a violation of due process, this is precisely how the trial process is supposed to work.").

Emphasizing that *Napue* requires the government to correct false testimony "when it appears," 360 U.S. at 269, 79 S.Ct. 1173, appellant contends that the government had an affirmative duty to *immediately* disclose the falsity to defense counsel (before the jury heard the evidence) so that she could make informed decisions regarding defense strategy. *See also Miller v. United States,* 14 A.3d 1094, 1107–08 (D.C.2011) (stressing that, in *Brady*[5] context, "the Constitution requires that disclosure be made at such a time as to allow the defense to use the favorable material effectively in the preparation and presentation of its case.... Prosecutorial resort to a strategy of 'delay and conquer[ ]' ... is not acceptable.") (citations and quotation marks omitted).

Appellant places important limitations on his own argument. He "is not suggesting that the government generally must disclose how it is planning on rehabilitating witnesses friendly to its side or how it intends to explain discrepancies in statements witnesses have made." Moreover, "the government generally does not need to disclose how it intends to meet the force of a witness called by the defense...." "And he has not argued that the Due Process Clause imposes some generalized duty on the United States to disclose inculpatory evidence...." "When, however, the government realizes that sworn testimony its witness provided at an earlier hearing simply was false, and where the falsity is important in the case, the Due Process Clause requires disclosure."

By waiting until the defense had called Sergeant Evans and relied on the inaccurate testimony, appellant asserts, "the government was able to capitalize on its failure to make timely correction of the false testimony" by "unambiguously explain[ing] away the apparent, but actually non-existent, conflict between Evans's preliminary hearing testimony and Officer Greg Nagurka's trial testimony." Appellant claims that the government's "ambush" violated its duty to refrain from striking "foul" blows, *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), and prevented the defense from making strategic decisions based on an accurate record.[6] *See also Scipio v. State,* 928 So.2d 1138, 1145 (Fla.2006) ("[T]he policy of avoiding trial by ambush or surprise has

---

**5.** *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

**6.** The government argues that this claim has not been preserved for appeal and that we should therefore apply the plain error standard of review. We agree that defense counsel's cryptic references to the "detention decision" and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), were not very illuminating in this context. For example, a bare reference to *Brady* generally is understood to assert that the government has withheld exculpatory evidence. Sergeant Evans' testimony was not exculpatory. More-

over, Sergeant Evans did not testify as a government witness at trial, so the government was not obliged to disclose information that could be used to impeach him.

However, for the purposes of this appeal, we assume, without deciding, that the issue was fairly raised below. *See Salmon v. United States,* 719 A.2d 949, 953 (D.C.1997) (recognizing that "difficult questions may sometimes arise at trial with little warning," and permitting parties to refine their arguments on appeal so long as the claim was fairly raised below).

even greater application in the criminal context, where the stakes are much higher and the obligation of the State to see that justice is done is much greater than that of the private litigants in a civil dispute.").[7]

There is much force to appellant's argument. We think it evident, and the government conceded at oral argument, that if the prosecutor had discovered the witness's mistake upon leaving the preliminary hearing, he would have had an obligation to immediately inform the court and defense counsel of the erroneous testimony so that the magistrate judge could have revisited her finding of probable cause and the attendant detention decision.[8] If that had happened in this case, appellant would have learned of the error long before trial and would have been able to use this information when making decisions about trial strategy.

Here, however, the falsity of the testimony was not discovered until the trial was in progress, by which time the preliminary/detention hearing was a distant memory. Neither the court nor the prosecutor would naturally have focused on a need to correct the record of that proceeding. *See Coleman v. Burnett*, 477 F.2d 1187, 1208 (D.C.Cir.1973) (the return of an "indictment bars relitigation of the question of probable cause"). The current phase of the litigation was being conducted before a different trier of fact, and the government had not called Sergeant Evans as a witness at trial. The prosecutor's immediate obligation under *Napue* was to ensure that the jury was not misled by false or misleading testimony. That was accomplished here, although it is not clear from the record whether this occurred because of the prosecutor's attention to the requirements of *Napue* or as a by-product of the adversary process. In any event, this is not a case where false testimony went uncorrected.[9]

Thus, the question raised by appellant is what the prosecutor should have done in the few hours after he realized Sergeant Evans had mistakenly testified at the preliminary hearing and before Evans testified for the defense at trial. We have found no binding precedent, and appellant points us to none, that holds that a prosecutor has a duty to notify defense counsel about prior false testimony *before* he corrects that false testimony in front of the finder of fact.[10] Although such advance

---

**7.** In its discussion, the Florida Supreme Court cited *Brady*, 373 U.S. 83, 83 S.Ct. 1194; *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); and *Berger*, 295 U.S. 78, 55 S.Ct. 629.

**8.** *Cf. Bryan v. United States*, 836 A.2d 581, 586 (D.C.2003) (vacating opinion affirming pretrial detention decision because prosecutor failed to reveal information affecting credibility of informant).

**9.** We have seen no evidence that the prosecutor deliberately withheld this information in order to "ambush" the defense. Nor was there any *Brady* violation. Sergeant Evans' revised testimony was not exculpatory. Moreover, the preliminary hearing transcript had not been suppressed. Defense counsel had been at the preliminary hearing and had a transcript of Sergeant Evans' testimony, while the prosecutor did not. And although she did not know that he had confused the two cases, defense counsel was aware of the other case about which Sergeant Evans had been thinking.

**10.** Appellant principally relies on two cases. In *Scipio v. State*, the Florida Supreme Court held that the government has an obligation to inform a defendant before trial when a government investigator changes his testimony and the government is "aware that the defense intend[s] to rely heavily on" the prior testimony. 928 So.2d 1138, 1145 (Fla.2006). However, the court based its decision almost entirely on Florida's broad discovery rules, which require the prosecutor to provide the statement of any person "known to the prosecutor to have information that may be relevant to any offense charged or any defense

notice might help the defendant make better strategic decisions at trial, we decline to decide, on the record before us, whether the *Napue* doctrine serves such a strategic purpose. Instead, we will assume, without deciding, that error occurred. *Cf., e.g., Scipio,* 928 So.2d at 1145 (concluding that the prosecutor struck a "foul" blow by failing to inform defendant before trial, under Florida discovery rules, that its investigator had changed his testimony). Even if the government improperly delayed its disclosure, reversal is not warranted in this case because appellant was not substantially prejudiced.

### B. Assessing Prejudice

▉ Normally, in evaluating a *Napue* claim, we would consider whether there was " 'any reasonable likelihood' that false testimony could 'have affected the judgment of the jury.' "[11] *Hawthorne v. United States,* 504 A.2d 580, 589–90 (D.C.1986) (quoting *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), which in turn was quoting *Napue,* 360 U.S. at 271, 79 S.Ct. 1173). In this case, however, the false testimony was corrected in front of the fact-finder, and thus the usual test does not fit the circumstances. Appellant does not claim that the jury was misled, but rather that his oppor-

tunity to make decisions about trial strategy was unfairly limited.

▉ This is, of course, a claim to be taken seriously. But we are not obliged to accept uncritically appellant's assertion that his trial strategy would have been different. *See, e.g., Moore v. United States,* 846 A.2d 302, 307–08 (D.C.2004) (rejecting appellant's claim "that the withholding of Perry's prior statement adversely influenced his trial preparation, opening statement, and choice of trial strategy"); *Edelen v. United States,* 627 A.2d 968, 971 (D.C.1993) (court was unpersuaded by appellant's claim that "his pretrial preparation would have been different" if he had known of statements earlier). We frequently consider claims that a delay in disclosure has interfered with trial strategy. *See, e.g., Perez v. United States,* 968 A.2d 39, 66 (D.C.2009) (noting that timely disclosure is required under *Brady,* in part, so that the defendant can "craft an appropriate defense"). Nonetheless, a finding that the prosecution improperly delayed disclosure, even until the middle of trial, does not result in automatic reversal. *See id.* (appellants did "not demonstrate[ ] any prejudice by the delay in receiving the statement") (internal editing omitted). We will reverse only if the

---

thereto." 928 So.2d at 1142 (quoting Fla. R.Crim. P. 3.220(b)(1)(A)). This rule has no counterpart in the District's discovery rules. In the second case, *People v. Wiese,* the government failed to correct false preliminary hearing testimony by its witness that he had not received any plea agreement in exchange for his testimony. 425 Mich. 448, 389 N.W.2d 866, 868 (1986). Based on that false testimony, defense counsel did not cross-examine the witness at trial about any possible plea agreements. *Id.* at 870. Because "the ultimate effect of the prosecution's failure to correct that false testimony resulted in considerable prejudice to defendant *at trial,*" and therefore could have affected the jury's verdict, the Supreme Court of Michigan held that

the defendant's due process rights had been violated. *Id.* (emphasis added). In this case, by contrast, the falsity of the testimony was revealed at trial.

11. This test is essentially equivalent to the constitutional harmless error test proposed by appellant. *See United States v. Bagley,* 473 U.S. 667, 679 n. 9, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) ("[T]he standard of review applicable to the knowing use of perjured testimony is equivalent to the *Chapman* harmless-error standard."); *Strickler v. Greene,* 527 U.S. 263, 299, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (Souter, J., concurring) (same).

defendant's rights were "substantial[ly] prejudice[d]." [12] *Miller*, 14 A.3d at 1115.[13]

 Moreover, we give careful consideration to the trial court's assessment of the need for a mistrial. *Edelen*, 627 A.2d at 972 (noting that the trial judge is "in a far better position than we are to assess the atmospherics of the case and to determine whether, given all that had occurred, [the] defense was appreciably prejudiced by any delay in the disclosure to counsel"). "A mistrial is a severe remedy—a step to be avoided whenever possible, and one to be taken only in circumstances manifesting a necessity therefor." *Najafi v. United States*, 886 A.2d 103, 107 (D.C.2005) (quoting *Salmon v. United States*, 719 A.2d 949, 956 (D.C.1997)). For this reason, a decision "to grant a motion for a mistrial is committed to the sound discretion of the trial court," and we will reverse that decision "only where it 'appears irrational, unreasonable, or so extreme that failure to reverse would result in a miscarriage of justice.'" *Evans v. United States*, 12 A.3d 1, 7 (D.C.2011) (quoting *Coleman v. United States*, 779 A.2d 297, 302 (D.C.2001)). Here, appellant has not demonstrated that degree of prejudice.

First, appellant exaggerates the harm done by Sergeant Evans' testimony. By the end of his testimony, the jury knew Sergeant Evans had previously testified under oath that Officer Nagurka had said appellant slid the gun under the fence. Although Sergeant Evans attempted to explain the change in his testimony, the trial court noted that his explanation was not very convincing. Far from making "defense counsel appear ignorant before the jury," as appellant asserts, Sergeant Evans' reversal under oath made the sergeant appear careless and unreliable.[14]

Second, as the trial court observed, defense counsel immediately and effectively responded to the changed testimony by impeaching Sergeant Evans. She also forcefully argued in closing that Sergeant Evans' testimony by itself created reasonable doubt. Although he had sworn to tell the truth at the prior proceeding, nine months later he "somehow just miraculously recalled" that he had confused the facts of this case with those of another. Counsel compared Sergeant Evans to a doctor who was treating a juror's child. "[W]ill you pause or hesitate to allow him to go forward, when he's going to come in and say, 'Oh, well, I got him mixed up with

12. Similarly, even when there has been a violation of discovery rules, "not every error by the trial court in applying sanctions under Rule 16 requires reversal." *Lee v. United States*, 385 A.2d 159, 164 (D.C.1978). "It is only where such error is substantially prejudicial to an appellant's rights that reversal is justified." *Id.* at 163.

13. Thus, contrary to appellant's suggestion, we do not apply the *Chapman* constitutional harmless error test, *see Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), to claims, like this one, that the prosecution improperly delayed in making required disclosures. *See, e.g., Perez*, 968 A.2d at 66 (although there was "no question" that the "testimony should have been disclosed before trial" to fulfill prosecutor's obligations

under *Brady*, appellants were not entitled to reversal because they "ha[d] not demonstrated any prejudice by the delay in receiving the statement") (internal editing omitted).

14. We do not mean to suggest that there is no potential psychological impact on a jury (as well as on the defense) when a witness whom defense counsel has called to score a major point against the government changes his testimony. Nor are we implying that defense counsel could never be so undermined as to affect a jury's verdict or substantially prejudice the defendant. *See Scipio*, 928 So.2d at 1151 ("Not only was the only available defense evidence removed, in the process the defense was made to look utterly foolish...."). We simply conclude that, in this case, no such prejudice occurred.

a patient I saw two days ago and I prescribed the wrong medication?' "

Moreover, because Sergeant Evans' testimony at the preliminary hearing was given under oath, that prior testimony came in as substantive evidence to impeach Officer Nagurka. *See* D.C.Code § 14–102(b) (2001) (prior inconsistent statement given under oath is admissible as substantive evidence if the declarant testifies at trial and is subject to cross-examination). If appellant had not called Sergeant Evans, appellant would have been left with the unimpeached eyewitness testimony of Officer Nagurka that appellant made "a sharp right turn towards this alley" to avoid the police unit, and then "toss[ed] a ... silver object into the front yard" of a nearby house where a gun was found immediately thereafter. For this reason, appellant was arguably better off having called and impeached Sergeant Evans than he would have been without this testimony.

Finally, appellant claims that if he had "known the truth about Evans' pretrial testimony, [he] would not have called Ev-ans," and would have "just focus[ed] on the[ ] weaknesses in the United States's case." But appellant raised all of these weaknesses at trial, and he overestimates their potential to create a reasonable doubt on the facts of this case. Appellant's defense—that he was arrested for a gun that someone else had "stashed" in plain view in the front yard—simply does not stand up to reason and would certainly not have been any stronger in the absence of Sergeant Evans' testimony. On this record, appellant was not substantially prejudiced by any impropriety in the timing of the government's disclosure, and the trial court did not abuse its discretion in denying his motion for a mistrial. The judgment of the Superior Court is therefore

*Affirmed.*