**James C. DAVIS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 6611.**

District of Columbia Court of Appeals.

Argued Sept. 19, 1973.

Decided Feb. 11, 1974.

Thomas William Ullrich, Washington, D. C., appointed by this court, for appellant. T. Paul Freeland, Washington, D. C., appointed by this court, and Robert St. John Roper, Washington, D. C., were on the brief, for appellant.

John C. Lenahan, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Robert S. Tignor, Asst. U. S. Attys., were on the brief, for appellee.

Before NEBEKER and HARRIS, Associate Judges, and HOOD, Chief Judge, Retired.

NEBEKER, Associate Judge:

This appeal is from convictions of sodomy, taking indecent liberties with a minor, and assault with a deadly weapon, D. C.Code 1973, §§ 22–3502, 22–3501(a), and 22–502, respectively. Appellant claims error in the denial of his motion for a psychiatric examination, restriction of the scope of voir dire, denial of his motion for a bill of particulars, and alleged evidentiary errors. We affirm the convictions.

In the early evening of November 20, 1971, a minor named Lucius and his friends were approached by appellant in front of a drug store. Appellant was holding a bag of groceries, which he requested one of the boys to carry home for him. Lucius agreed to carry the bag, having done so for appellant on a previous occasion. Appellant offered Lucius candy and money for carrying the bag. He, alone with Lucius and one other boy, walked toward a supermarket. Upon arrival, appellant sent Lucius into the market on an errand and gave Lucius' friend 25 cents, telling him he only needed one person to carry the bag. Lucius, walking with appellant, carried the bag to the apartment shared by appellant and his brother. Appellant went into the bathroom, then returned to the kitchen and pointed a gun at Lucius, ordering him away from the door. Lucius was then ordered to undress and lie on the couch, whereupon appellant rectally sodomized the boy while holding a gun to his head. Appellant ceased the attack when Lucius promised to return the next day. He gave the boy $3 and some change and the boy left.

Lucius ran back to the market and told his friends of the attack. They started to run home.[1] On the way, they flagged a police scout car and with the officers returned to the apartment.[2] After knocking, the officers waited outside for about fif-

[1]. The record indicates that when Lucius returned to the market he told his friends " . . . the man tried to put his thing into my behind." (R. at 39.) After leaving the market area, Lucius told one of his friends " . . . that he did do it, did do it to me, did it to me." (R. at 42.) Over objection of defense counsel, Lucius testified he told a different version of the story at the market because "I was embarrassed because of the other people in [the supermarket]." The prosecution then asked what exactly happened and Lucius, inter alia, testified that appellant had in fact made penetration. and that it felt "like somebody was cutting on me or something." (R. at 45.) Testimony was taken from a doctor from D.C. General Hospital who examined Lucius. He testified that upon examination of the anal area, he found a greasy cream and also a fissure. The doctor also testified that such an abrasion was compatible with rectal sodomy. (R. at 102–03.)

[2]. Lucius testified that he told the police officer that appellant had "put his private into my behind." (R. at 46.) The officer testified that Lucius initially had stated that "the man tried to molest him", but later while driving to the address, he told the officer that appellant had made penetration.

teen minutes, at which time appellant's brother arrived and opened the door. Appellant was found lying on the bed, apparently asleep, with an empty whiskey bottle nearby. Upon being identified by the victim, he was arrested.

■ Appellant claims he was erroneously denied a psychiatric examination prior to the trial to determine whether he could be held responsible for the crimes. On the day of the trial, but before the trial began, defense counsel moved for a continuance and a mental examination pursuant to D. C.Code 1973, § 24–301(a). That section provides that if it appears to a court from its own observation or from prima facie evidence submitted to it that the accused is of unsound mind or is mentally incompetent, it may order the accused committed for psychiatric examination. In support of his motion, defense counsel informed the court that appellant's F.B.I. record revealed that in 1967 there was at least one conviction for a crime against nature. Counsel offered no precise explanation of the previous conviction but merely alluded to the crime as being one of a similar nature. We find that there was no abuse of discretion in this instance in refusing a continuance for a mental examination. *See* Brown v. United States, D.C.App., 244 A.2d 487 (1968).

■ Appellant claims error resulting from the trial judge's sustaining objections to two proposed voir dire questions. Those questions were: (1) "Is there anyone here who feels [that] sexual acts with a minor are either immoral, illegal, or indecent?"; and (2) "Do any of you ladies and gentlemen have any question with the theory of law that the penis must penetrate the anus?" It is well recognized that the judge has broad discretion in determining the scope and form of questions used in voir dire but that such discretion is "subject to the essential demands of fairness."[3] We also recognize that appellant is guaranteed the right to be tried by an impartial jury[4] and in aid of that right the accused may examine jurors concerning prejudices of a serious character showing a possible "disqualifying state of mind".[5] This record does not demonstrate to us that by sustaining the objections the trial judge transgressed the rule of fairness or otherwise erred.

■ The first question as phrased by defense counsel, aside from being inherently vague, was objectionable because, instead of determining juror prejudice, it inquired respecting a proposition of law and hence invaded the function of the trial judge.[6] The form of the question as subsequently phrased by the judge and propounded by counsel overcame this objection and properly focused on potential juror prejudice.[7]

■ As to the second question respecting jurors' views on the element of penetration, we cannot conclude that the trial judge erred in refusing to allow it to be asked. It is clear that penetration is a critical issue in this case. The question, as phrased, might well have confused the jurors as to their duty to follow the instructions of the court on the law since it could imply that they might be permitted to "have any question on [that] theory of law". Since the question had no apparent legitimate voir dire purpose and was fraught with possible mischief, it was

3. Harvin v. United States, D.C.App., 297 A.2d 774, 777 (1972), citing Aldridge v. United States, 283 U.S. 308, 310, 51 S.Ct. 470, 75 L.Ed. 1054 (1931).

4. U.S.Const. Amend. VI.

5. Aldridge v. United States, *supra* note 3, at 313, 51 S.Ct. 470.

6. Stone v. United States, 324 F.2d 804 (5th Cir. 1963).

7. The question as finally stated was: "[I]s there anyone here who feels that because of the subject matter in this trial they will be unable to follow the instructions of the judge as to the law, irrespective as to their own personal feelings about the law?" [R. at 200.]

properly excluded. It focused on a proposition of law which was for the court.

■■ Appellant also claims he was denied constitutionally protected rights of due process, representation by counsel, and of confrontation and cross-examination—all of which he claims deprived him of the opportunity of presenting an effective defense. Appellant's first contention is that the trial court erred in denying his motions for discovery of the identity of prosecution witnesses. Defense counsel moved for an order requiring discovery of the names and addresses of government witnesses stating that he was otherwise unable to make adequate preparation. That denial did not constitute an abuse of discretion, for, absent a statutory or constitutional requirement,[8] the governmnent need not disclose a list of its witnesses in trials of non-capital offenses.[9] Three potential witnesses were of tender age, and Lucius' parents had interceded and not allowed defense counsel to interview him.

Appellant further contends that the court erred in denying defendant's motion for a bill of particulars filed pursuant to D.C. Code 1973, § 22–3502. In addition to proscribing sodomy, that section sets forth guidelines for the manner in which the particular act may be described in the indictment. If a bill of particulars is requested, it must set forth "the particular acts which constitute the offense charged." *Id.* At the trial, defense counsel stated that a bill of particulars had not been produced by the government. Counsel stated, however, that he had been in conference with the prosecutor who on one occasion gave defense counsel the essential facts of the case and on the day prior to the trial revealed a summary of the government's case. Counsel maintained that such compliance was not enough, stating that the bill must be in written form. For the record the prosecutor stated that the following documents were given to defense counsel prior to voir dire: "the statement taken from Lucius . . .; the written statement of [L.C.]; the written statement of [J.C.]; the sex squad report filled in by Officer Kyle; the mobile crime lab report; the medical report of Dr. Schutt-Aine; the chemist's report by D.C. General Hospital; the P.D. Form 163 (offense report); the grand jury minutes; and the property records of the Metropolitan Police Department."

■ We recognize that pursuant to § 22–3502, and upon motion by defense counsel, a bill of particulars is to be granted as "a matter of right."[10] The purpose of a bill of particulars is to inform the defendant such that he may prepare a proper defense and also avoid surprise.[11] Nowhere does counsel complain that he was surprised by the trial evidence, nor that he was denied the necessary information that would be contained within such a bill. No request for postponement of trial was made for defense preparation in light of the late but complete informal discovery afforded. It must be noted that the failure of government here was an administrative failure in that the prosecutor went on vacation between hearing and trial. Our affirmance on this point should not be viewed as an acceptance of such forgetfulness. In the future, greater attention should be paid by the government concerning compliance to similar motions. Our holding on this point is that the government's delinquency was harmless. *See* D.C.Code 1973, § 11–721(e).

■ Appellant's next contention is that he was denied access to Lucius' subpoenaed

8. Super.Ct.Cr.R. 16; *compare* 18 U.S.C. § 3432 (1970).

9. Carpenter v. United States, 463 F.2d 397 (10th Cir. 1972); United States v. Seasholtz, 435 F.2d 4 (10th Cir. 1970); United States v. Frank, 23 F.R.D. 145 (D.D.C.1959); *cf.*

United States v. Eley, D.C.App., 286 A.2d 239 (1972).

10. Tonker v. United States, 85 U.S.App.D.C. 369, 370, 178 F.2d 712, 713 (1949).

11. Yankovitz v. United States, D.C.Mun.App., 182 A.2d 889 (1962).

school records. The trial judge conducted an *in camera* inspection of the boy's school records after they were produced by the assistant school principal who refused to deliver them to defense counsel. When defense counsel sought to view the records he proffered that he knew nothing about the boy's background, particularly whether the boy had any prior homosexual tendencies or behavior problems. After inspecting the records, the trial judge advised counsel, " . . . I find nothing in those records and therefore, I will not permit you to examine those records." Based upon Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966), appellant argues that it is the advocate who should determine the usefulness of the subpoenaed information and not the judge sitting *in camera.*

School records, for the most part, reflect academic evaluation, though to be sure behavioral and developmental evaluations may also be included. Their contents are sensitive insofar as the student and his family are concerned. *E. g., Doe v. Mc-Millan,* 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973). Moreover, candid and complete evaluation of a child might be squelched if, without a compelling and detailed demonstration of need, teachers are subject to call for explanation and justification of grades or other evaluation remarks made months or years earlier. We have caused the school records in this case to be included (though sealed) in the record on appeal. Our independent examination of them convinces us that no prior homosexual or other serious behavioral problems are reflected therein, and that the refusal to permit counsel to see them does not require reversal.

■■■    Additionally, error is claimed by the trial court's refusal to admit formally into evidence documents reflecting prior inconsistent statements of the complaining witness. With an intent to attack the witness' credibility, defense counsel in cross-examination used the statements for impeachment purposes. The written statements sought to be introduced included Lucius' pretrial statement to the police and excerpts of his grand jury testimony. Just prior to summation, defense counsel moved for admission of the written statements. The motion was denied. It is recognized that in certain circumstances refusal of formal introduction of documents may be error.[12] Therefore, our task is to determine whether in this case refusal to formally admit the written statements into evidence warrants reversal. The jury had the benefit of extensive cross-examination focusing primarily on the inconsistent statements. There was pointed final argument on these inconsistencies in an effort to impugn the credibility of the boy. We hold that it was not reversible error to deny formal introduction of the exhibits.

■■■    Finally, appellant asks us to read a portion of the record as reflecting an attempt by the government to impeach the complainant and, from that, to find error for want of a showing of surprise as required by D.C.Code 1973, § 14–102. This claim arises from the difference between the initial statement by Lucius to his friend that an attempted penetration had occurred and his subsequent statement that penetration was achieved. Lucius testified:

A. I was crying and running and then I saw Greg back down by the [supermarket]. Greg was at the corner holding his hand out, so I told Greg that the man tried to do it to my behind. Then me and Greg started running. . . .

Then when I got far away from [the supermarket], I told Greg that he did do it, did do it to me, did it to me.

Q. Lucius, the first time you saw Greg and you said that he tried to do it to you and a few minutes later after you got around the drug store, you said that he actually did do it. Why is it that the first time you said that the man tried to

12. Williams v. United States, 131 U.S.App. D.C. 153, 403 F.2d 176 (1968).

do it and later you said that he did do it?

Over objection, the boy was permitted to answer: "I was embarrassed because of the other people in the [supermarket]." The trial judge ruled, and we think correctly, that no impeachment was involved, but rather a permissible effort to obtain an explanation for established inconsistent statements. Such a neutral and logical attempt at clarification is not impeachment as contemplated by § 14–102, *supra*.

We are satisfied that the trial court did not commit reversible error. Therefore, the convictions are

Affirmed.