Stephen L. RAMBERT, Appellant,

v.

UNITED STATES, Appellee.

No. 90–944.

District of Columbia Court of Appeals.

Submitted Sept. 27, 1991.
Decided Feb. 7, 1992.

Susan Borecki, appointed by this court, was on the brief for appellant.

Jay B. Stephens, U.S. Atty., and John R. Fisher, Thomas J. Tourish, Jr., and Frederick W. Yette, Asst. U.S. Attys., were on the brief for appellee.

Before TERRY, SCHWELB and FARRELL, Associate Judges.

TERRY, Associate Judge:

On appeal from his conviction of robbery,[1] appellant contends that the trial court abused its discretion by refusing to grant a mistrial when, after allowing the

1. D.C.Code § 22–2901 (1989).

government to reopen its case to elicit testimony from a previously unknown witness, the court discovered that the government's representations about the availability of that witness were untrue. We find no abuse of discretion and accordingly affirm the conviction.

### I

John Lusby, a United Parcel Service (UPS) delivery driver, was robbed while attempting to make a delivery. On the morning of July 31, 1989, Lusby went to an apartment at 2525 Sayles Place, S.E., with a package for someone at that address.[2] After finding no one at home, Lusby left a delivery notice and returned to his truck with the package.

Just as Lusby reached his truck, appellant Rambert approached and grabbed at the package, demanding that Lusby turn it over. When Lusby refused, Rambert tried to snatch it out of his hands. After a protracted struggle, Rambert finally seized the package and ran into 2523 Sayles Place, the building next door to Lusby's original destination. Knowing that the building had a back door through which the robber would probably escape, Lusby decided that pursuit would be fruitless; accordingly, he called the police.

Leo Brown, an off-duty Metropolitan Police officer who lived nearby, saw Rambert running down the steps from the rear exit of 2523 Sayles Place with a package tucked under his arm "like he was fleeing the scene of a crime." Brown, a twenty-year resident of the neighborhood, recognized Rambert as someone who lived in the area. He went outside and spoke with Mr. Lusby and two police officers who had come in response to Lusby's call. Since their search of the neighborhood had yielded no results, Brown agreed to continue making inquiries in the area in an effort to find out the name of the robber.

A few weeks later, in early September, Officer Brown ascertained Rambert's identity through neighborhood sources. Brown was then shown an array of photographs and positively identified Rambert as the man he had seen running with the package under his arm. Lusby later identified Rambert as the robber from a photograph of a lineup, and both men positively identified him at trial.

The case went to trial on Tuesday, May 29, 1990, the day after Memorial Day. The government completed its presentation in one day, and after it rested, the court adjourned the proceedings until the next morning. However, on Wednesday morning, May 30, the prosecutor moved to reopen the government's case to present testimony from Ronnell Mason, an eyewitness to the crime whom the prosecutor had first heard about on the morning of May 29, just before the trial began. Recounting what Brown had told him, the prosecutor said that Officer Brown had first learned of Mason's existence over the Memorial Day weekend (May 26–28), but that Brown did not tell him about Mason until just before the beginning of the trial on May 29. Since these events had all taken place immediately before trial,[3] the prosecutor "had no idea that we were going to be able to get him [Mason], and he came this morning for the first time at 10:45."[4] Having made these

---

2. The package was wrapped in transparent plastic, so that Lusby (or anyone else, including the robber) could see that it contained three pairs of sneakers.

3. Initially, the prosecutor said he had first become aware of Mason's existence the previous evening (May 29). On the next page of the transcript, however, he corrected himself and said that Officer Brown "had told me when he came in the first thing yesterday morning [May 29] that he had seen this witness over the weekend. . . . When we recessed over last evening, overnight, I said to Officer Brown, 'Please try to locate that witness and bring him in today.'"

4. When the court asked the prosecutor when he had interviewed Officer Brown, the prosecutor replied:

It was at least two weeks before yesterday [*i.e.,* no later than May 15]. However, at that time Brown had not met this witness. Officer Brown told me that he encountered this witness over the Memorial Day weekend, and I think, [if] my recollection serves me, he said he saw him Monday. I'm not sure.

As you know, from what Officer Brown has said, he lives in the neighborhood, and apparently he just stopped by and started talking to this person [Mason], and that person told him that in fact he had witnessed this incident.

representations, the prosecutor asked the court for permission to reopen his case. The court granted the request over the objection of defense counsel, but said that it would consider granting the defense a continuance if Mason's testimony "would impact upon your defense...."

Mason then testified to substantially the same scenario recounted by Lusby. He said that he looked out his second-floor window and saw "a dude and a UPS man struggling on a truck," which was parked in front of his house. When the struggle ended, the "dude" ran through the building at 2523 Sayles Place carrying a package. On cross-examination, however, Mason stated that he had spoken to Officer Brown about the robbery on the day that it happened; in fact, Mason had gone to Brown's apartment building to talk to him about it. Brown was outside in front of the building, and Mason told him that the man he had seen running "just robbed a UPS truck." Mason testified that he and Brown were "not close, but we're friends," and that Brown knew his name and knew where he lived. Mason identified Rambert in court as the man he had seen struggling with the UPS delivery man.

Because Mason's testimony directly conflicted with the representations that Brown had made to the prosecutor, defense counsel moved for a mistrial "based on the fact that the police had plenty of time to get this witness. They knew his name, and they knew where he was, and the representation put to us does not comport with the testimony that we have just heard." The trial court noted that the only reason it had allowed the government to reopen its case was that the prosecutor represented that Brown had first learned of Mason's existence just before trial. After noting that "somebody isn't telling the truth, either [Mason] or Brown," the court excused the jury and recalled Officer Brown to the stand ("I want Brown in here right now") to testify about his knowledge of Mason.

During the ensuing *voir dire* examination, Brown admitted that he had never mentioned Mason to the prosecutor before May 29, and that when he first told the prosecutor about Mason, he had not even mentioned his name, nor had he ever "suggested or intimated to [the prosecutor] that there had been any other witness to the robbery" other than himself. He said that he had become aware of Mason's knowledge of the robbery "maybe two months or something ago," but that he "never really got into the conversation with him" until "last Friday," May 25, when he "really sat and talked to him, and that's when I really found out [what he knew about the robbery]." Brown did not recall having had a conversation with Mason on the date of the robbery, as Mason had testified. Finally, Brown admitted knowing that Mason had lived in the neighborhood for three or four years.

After hearing Brown's testimony, the court found that Brown had not mentioned Mason's existence to the prosecutor until May 29. The court also found, however, that Officer Brown's only failing in this case was that he had not been diligent in his investigation: "I don't think there is anything that he has done other than failure to pursue the matter." Having so found, the court denied the motion for mistrial.

## II

■ A decision allowing the prosecution to reopen its case is a matter within the sound discretion of the trial court. *Sellars v. United States*, 401 A.2d 974, 978 (D.C.1979). Such a decision will be reversed on appeal only on a showing of abuse of discretion, *Savage v. District of Columbia*, 54 A.2d 562, 570 (D.C.1947), and only if the defense has been prejudiced. *United States v. Robinson*, 225 U.S.App. D.C. 282, 290, 698 F.2d 448, 456 (1983). There are three factors which we must consider in reviewing a trial court's grant of permission to reopen the government's case: "whether the evidence caused surprise to the defendant, whether the defendant was given adequate opportunity to

---

So when I met with Officer Brown [earlier], he had not met this person yet. This person

he met for the first [time] over Memorial Day weekend, I think in particular on Monday.

meet the proof, and whether the evidence was more detrimental to the defendant because of the order in which it was introduced." *In re E.R.E.,* 523 A.2d 998, 1000 (D.C.1987) (citation omitted), *cert. denied,* 485 U.S. 937, 108 S.Ct. 1114, 99 L.Ed.2d 275 (1988).

■ Rambert contends that he was prejudiced by the government's introduction of Mason's testimony after the close of its case in chief because he was precluded from investigating a key government witness. We can discern no prejudice on this record. In the first place, the government was under no duty to disclose the names of its witnesses before trial. *See Davis v. United States,* 315 A.2d 157, 161 (D.C. 1974). Moreover, since the trial court had said, before Mason took the stand, that it would consider granting a continuance if Mason's testimony "would impact" on the defense, Rambert had a remedy available for any perceived prejudice. However, he never sought a continuance after Mason testified, and thus he cannot now complain that he did not have time to do whatever needed to be done. Finally, Mason's testimony added nothing new to the government's case, but merely corroborated the testimony of Mr. Lusby and Officer Brown. Mason's testimony, therefore, was no more damaging to Rambert than it would have been if the government had presented it earlier.

■ Nor can we find reversible error in the trial court's denial of defense counsel's motion for a mistrial. Like the decision to allow the government to reopen its case, a decision to grant or deny a mistrial is committed to the sound discretion of the trial court. *E.g., Lee v. United States,* 562 A.2d 1202, 1204 (D.C.1989) (citing cases). We will disturb that decision only in "extreme situations threatening a miscarriage of justice." *Beale v. United States,* 465 A.2d 796, 799 (D.C.1983), *cert. denied,* 465 U.S. 1030, 104 S.Ct. 1293, 79 L.Ed.2d 694 (1984). There are three factors which we take into account in considering whether to reverse: "the closeness of the case, the centrality of the issue affected by the [asserted] error, and the steps taken to miti-

gate the effects of the error." *Bliss v. United States,* 445 A.2d 625, 634 (D.C. 1982), *cert. denied,* 459 U.S. 1117, 103 S.Ct. 756, 74 L.Ed.2d 972 (1983) (citations omitted).

Applying the *Bliss* factors to this case, we hold that Rambert has fallen short of meeting his substantial burden of persuading us that the trial court's denial of a mistrial should be overturned. The government had already produced ample evidence, before Mason took the stand, to support the jury's guilty verdict. In addition to two photographic identifications, two eyewitnesses, including the victim, had already identified Rambert in court as the robber. Although Mason's testimony went to the central issue in the case, namely, the identity of the robber, the court's willingness to consider a request for a continuance was sufficient to mitigate any ill effects that the late introduction of this testimony might have had on Rambert's defense. Additionally, when it appeared that Officer Brown might have misled the prosecutor about his awareness of Mason as a potential witness, the court held a hearing and determined what had really happened. At the close of that hearing, the court was satisfied that Officer Brown's representations, although incorrect, did not prejudice Rambert significantly enough to warrant a mistrial. We cannot say that this conclusion was wrong.

*Affirmed.*

SCHWELB, Associate Judge, concurring:

The trial judge granted the prosecutor's motion to reopen on the strength of representations by Officer Brown which proved to be untrue. Whether Brown lied or simply "blew it," this situation is less than edifying and should not be readily countenanced. I agree with Judge Terry, however, that the trial judge did not abuse his discretion, especially since Rambert could have requested a continuance but did not do so. Accordingly, I join in the opinion of the court.