Carroll EDELEN, Appellant,

v.

UNITED STATES, Appellee.

No. 91–CF–1308.

District of Columbia Court of Appeals.

Argued March 31, 1993.
Decided June 17, 1993.

Laura L. Rose, Public Defender Service, with whom James Klein and Jo-Ann Wallace, Public Defender Service, were on the brief, for appellant.

James Silver, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John R. Fisher, Elizabeth Trosman and Gary M. Wheeler, Asst. U.S. Attys., were on the brief, for appellee.

Before SCHWELB, FARRELL and KING, Associate Judges.

SCHWELB, Associate Judge:

Carroll Edelen was convicted by a jury of second degree murder while armed[1] and possession of a firearm during a crime of violence.[2] On appeal, he presents three principal issues for our consideration. First, Edelen contends that he is entitled to a new trial under the doctrine of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), because the prosecution provided him with requested exculpatory materials too late for their effective use at trial, and because the trial judge refused to

take remedial action to protect Edelen's rights. Second, Edelen maintains that the trial judge abused his discretion in refusing to declare a mistrial after the government knowingly elicited inadmissible and allegedly inculpatory hearsay testimony. Finally, Edelen claims that the trial judge abused his discretion by refusing to allow the defense to recall a prosecution witness for the purpose of impeaching her with a prior conviction which she had previously denied. We view some of the prosecution's actions in this case as less than exemplary. Nevertheless, for the reasons stated below, we affirm Edelen's convictions.

## I.

Linda Rogers was shot to death in the early morning hours of February 3, 1990. There were no eyewitnesses to the shooting. The prosecution presented evidence,[3] however, to the effect that on the night of the murder, Edelen was wearing a green army coat which he had borrowed from Philippa (Pam) Williams, a prosecution witness. Jennifer Jacobs, another government witness, who was then sixteen years of age, testified that she saw a man wearing a green army coat, whom she later identified as Edelen, loading a shotgun outside the building where Ms. Rogers was murdered. Ms. Jacobs went into the building and called the police. Approximately a quarter of an hour later, she heard a shot—presumably, the shot that killed Ms. Rogers.

Ms. Williams testified that on the following day, Edelen returned to her apartment without the green coat,[4] but with a shotgun. Jennifer Jacobs testified that she subsequently saw Edelen in the neighborhood and called the police a second time. As a result, Edelen was arrested.

The defense presented no witnesses, but attempted to discredit the prosecution testi-

---

1. D.C.Code §§ 22-2403, -3202 (1989).

2. D.C.Code § 22-3204(b) (1989).

3. The sufficiency of the evidence against Edelen is not disputed, and we therefore do not describe the testimony in detail.

4. Edelen told Ms. Williams that the coat was at "John's house." A green coat recovered from one John Hobby's residence was found to have three small human blood stains, but it was not established whether the blood was that of Ms. Rogers.

mony. A principal defense theory was that Anthony Pate, not Edelen, was the person who was wearing a green army coat and who shot Ms. Rogers. The defense introduced into evidence a stipulation that Pate had told a grand jury that on February 3, 1990, he had possessed drugs in the block where Ms. Rogers was murdered.

## II.

During pretrial discovery, the defense made a *"Brady"* demand for all exculpatory information which was in the possession of the prosecution. Edelen's attorney specifically requested information regarding any inconsistencies in the description of the suspect. Before trial, no information was provided to the defense in response to this request. After jury selection had been completed, however, the prosecutor disclosed that Donna Motley, who was to be called as a government witness, had informed the prosecutor on that very morning that she had seen Anthony Pate, rather than Edelen, wearing a green jacket on the night of the murder in the area where it occurred. Edelen's attorney was thus aware of this information by the time that he made his opening statement. Thereafter, on the second day of trial, the prosecutor provided the defense with *Jencks* material, which consisted of the grand jury testimony of Ms. Motley and of another witness. Ms. Motley had told the grand jury that she had seen Edelen shortly after the shooting, that he was chatting with a woman from the neighborhood, and that at that time he was wearing a white shirt and dark pants.

Upon receipt of the *Jencks* material, Edelen's attorney moved the court to dismiss the indictment with prejudice, or in the alternative, to declare a mistrial. Counsel argued that Ms. Motley's grand jury testimony contained *Brady* information which should have been disclosed to the defense prior to trial. The trial judge refused to grant any of the requested relief. The judge stated, among other things, that he was not convinced that Ms. Motley's recollection that Edelen was dressed in a white shirt was necessarily inconsistent with evidence that he had been wearing a green jacket a short time earlier. The judge concluded that the belated disclosure did not deny Edelen the effective use of the allegedly exculpatory material, and that Edelen therefore was not prejudiced. Defense counsel asked for a brief continuance so that he could absorb the new information and readjust his trial strategy, but the judge denied the request and decided to proceed with the trial at once.[5]

Edelen contends that the government's tardiness in providing him with materials to which he was entitled well before trial prejudiced his trial preparation, in that it adversely affected his investigation, his interviews with potential witnesses, his opening statement, and his cross-examination of witnesses for the prosecution.

The refusal by the prosecution to disclose material evidence favorable to the defense deprives the defendant of his liberty without due process of law. *Brady, supra*, 373 U.S. at 87, 83 S.Ct. at 1196–97. "Although *Brady* claims typically 'involve[ ] the discovery, after trial, of information which had been known to the prosecution but unknown to the defense,' " *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976), it is now well settled that the prosecution must disclose exculpatory material "at such a time as to allow the defense to use the favorable material effectively in the preparation and presentation of its case, even if satisfaction of this criterion requires pretrial disclosure." *United States v. Pollack*, 175 U.S.App.D.C. 227, 236, 534 F.2d 964, 973, *cert. denied*, 429 U.S. 924, 97 S.Ct. 324, 50 L.Ed.2d 292 (1976). Accordingly, this court has rejected any notion that disclosure in accordance with the Jencks Act satisfies the prosecutor's duty of seasonable disclosure under *Brady*, or that if such disclosure is made, the burden may then be shifted to the defendant, under pain of waiver, to request a continuance or similar remedy. *James v. United States*, 580 A.2d 636, 643–44 (D.C.1990). Arguably, the prosecutor's failure to pro-

---

5. The judge declined even to continue the matter until after lunch.

vide the defense, in advance of trial, with Ms. Motley's statement that Edelen had been wearing a white shirt on the evening in question put in jeopardy the very interests which *Brady* is designed to protect.

■ Reversal for failure to provide exculpatory material, however, is warranted only where there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. *Catlett v. United States*, 545 A.2d 1202, 1217 (D.C.1988) (citing *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383–84, 87 L.Ed.2d 481 (1985) (concurring opinion)). Accordingly, where the defendant receives potentially exculpatory information in time to use it effectively at trial, his conviction will be sustained. *Catlett, supra*, 545 A.2d at 1217. (citing *Lewis v. United States*, 408 A.2d 303 (D.C. 1979)). The government argues that the defense could and did use the information, and used it effectively, and that Edelen therefore suffered no substantial prejudice.

■ We conclude that the trial judge did not abuse his discretion by denying defense counsel's various requests. Ms. Motley's statement that Pate was dressed in green was disclosed before the parties made their opening statements, and defense counsel was therefore able to incorporate it into his initial address to the jury. Moreover, it appears that Ms. Motley did not provide this information to the prosecutor until the beginning of the trial, and that the prosecutor promptly provided it to the defense. Under these circumstances, we have no basis for faulting the prosecutor for belated disclosure.

■ Ms. Motley's grand jury testimony to the effect that she had seen Edelen wearing a white shirt presents a more difficult question. That information was not disclosed to the defense until after Edelen's attorney had made his opening statement. Edelen's attorney was thus precluded from pitching his case, from the outset, on the promised evidence not only that Pate was

dressed in green, but also that soon after the shooting Edelen was wearing white. Nevertheless, counsel was apprised of Ms. Motley's grand jury testimony before the principal prosecution witnesses took the stand, and he was able to use it in attacking the government's evidence.

Edelen contends that his pretrial preparation would have been different if he had known—as he claims he was entitled to know—of Ms. Motley's statements, which arguably tended, at least in modest measure, to exculpate him and to inculpate Pate. We do not find this contention persuasive. Edelen's counsel had ample reason, long before the disclosure of the alleged *Brady* information, to look for any witness who could testify that he or she saw Pate in green or Edelen in white on the evening that the decedent met her violent end. No such witness (other than Ms. Motley) [6] was produced. We also note that, although Edelen was represented by resourceful and conscientious counsel from the Public Defender Service, no motion for a new trial on the basis of newly discovered evidence was ever filed, nor has Edelen tendered, to the present day, any exculpatory statement from any witness whom he discovered on the basis of the belated *Brady* disclosures.

We emphasize that Edelen's claim of a *Brady* violation is not a frivolous one. Ms. Motley's grand jury testimony should at least arguably have been provided to the defense much more promptly than it was. Indeed, the government does not contend in this court that its failure to make earlier disclosure was proper. Its decision not to enter the fray on this subject is significant, for we rightly expect prosecutors to resolve all reasonable uncertainty about the potential materiality of exculpatory evidence in favor of prompt disclosure, especially in response to a pointed request—as here—for evidence of the very kind in question. *See Bagley*, 473 U.S. at 682–83, 105 S.Ct. at 3383–84 (concurring opinion) (implying that defendant's burden of showing materiality to outcome will be lighter

**6.** Ms. Motley's presence on the scene, and thus her potential as a witness, was disclosed to the defense during the hearing on Edelen's motion to suppress evidence, which was heard some three weeks prior to the trial.

"the more specifically the defense requests certain evidence, thus putting the prosecutor on notice of its value ...").

Nevertheless, the trial judge was on the scene. He was in a far better position than we are to assess the atmospherics of the case and to determine whether, given all that had occurred, Edelen's defense was appreciably prejudiced by any delay in the disclosure to counsel of the color of the clothing allegedly worn by Pate and Edelen on the night of the murder.

The decision whether to declare a mistrial is confided to the trial judge's sound discretion. *Rambert v. United States*, 602 A.2d 1117, 1120 (D.C.1992); *Martin v. United States*, 606 A.2d 120, 132 (D.C. 1991). We likewise accord the trial judge wide latitude as to whether to grant or deny a motion for a continuance. *O'Connor v. United States*, 399 A.2d 21, 28 (D.C. 1979).[7] It might well have been provident for the judge to grant at least a brief continuance in order to permit defense counsel to absorb the new information and to make appropriate strategic or tactical readjustments. Nevertheless, we note that the jury learned at trial the critical facts, namely, that Ms. Motley claimed to have seen Pate in green and Edelen in white. There was no persuasive reason for the trial judge to believe that earlier disclosure, or a brief continuance, would have significantly altered the posture of the case before the jury. Indeed, nothing has been proffered since the trial to support such a notion. Viewing the record as a whole, we cannot say that the trial judge abused his discretion.

### III.

In connection with the second issue raised by Edelen, we are troubled by the prosecution's improper attempt to elicit potentially damaging but patently inadmissible hearsay testimony. We conclude, however, that Edelen has failed to show prejudice warranting reversal.

The reader will recall that Anthony Pate was the individual whom Ms. Motley, a prosecution witness, claimed to have observed in a green coat on the night the decedent died. The defense theory, as we have seen, was that "Pate did it," or at least that Pate may have killed the decedent, and that there was therefore a reasonable doubt of Edelen's guilt. To counter this theory, the prosecutor proposed to call Pate as a government witness. Pate, however, invoked his Fifth Amendment privilege against self-incrimination, and he refused to testify, in spite of the government's offer of informal immunity from prosecution. The government requested a twenty-four hour continuance in order to obtain a formal order of immunity. The judge denied the motion.

Undeterred, the prosecutor re-called Detective Victor Smith as a government witness. After Detective Smith had told the jury that Ms. Williams had selected Edelen's photograph from a photo array, the following colloquy ensued:

Q. Did there come a time that you interviewed Anthony Pate?

A. There did.

Q. Did you show an array to him?

A. I did.

Q. Did he pick out anyone from the array?

A. He did.

Q. Who[m] did he pick out?

A. The defendant.

THE COURT: Detective, would you step down for a second?

(At the bench.)

THE COURT: He showed the array to who[m]?

MR. WHEELER [the prosecutor]: Anthony Pate.

THE COURT: Anthony Pate is not going to testify.

MR. HURLEY [Edelen's attorney]: Your Honor, I will have to ask for a mistrial.

---

**7.** We noted in *O'Connor*, however, and reiterate today, that "a rigid insistence by the court upon expedition of trial in the face of a justifiable request for delay can render the right to defend an empty formality." *Id.*, 399 A.2d at 28 (citing *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849–50, 11 L.Ed.2d 921 (1964)).

MR. WHEELER: There is no testimony as to what he picked out.

THE COURT: What is the relevance that he picked out a picture of the defendant? I have just ruled that Mr. Pate is not going to testify. The fact that Mr. Pate picked out a photograph of the defendant, what is the relevance of it?

MR. WHEELER: Your Honor, the defense is going to argue to the jury that Mr. Pate was the killer.

\* \* \* \* \* \*

MR. HURLEY: Your Honor, that is extremely prejudicial. The Court has just ruled Mr. Pate cannot testify, so the Government tries to get in the back door that Anthony Pate picked out my client.

THE COURT: No. That is why I stopped him. He didn't say—all he said is he picked out a photograph. We don't know why he did it or under what circumstances he did it. It has not come before the jury.

Let's stay away from all of that. I will tell them to disregard that testimony in its entirety. It has been stricken.

MR. HURLEY: Your Honor, I just don't think that is sufficient. The impression that I got is he was implicating [sic] it was my client.

THE COURT: No, he didn't do that.

MR. HURLEY: We have got the testimony, and the officer has already testified, I think it's clear that is what the implication was, during his investigation that Pate fingered my client.

THE COURT: No. Whether or not Pate fingered your client has not come before this jury. What has come before this jury is a witness who positively identifies your client, another witness who testifies about the gun. You can put on any defense that you choose. There is no evidence that Mr. Pate was on the scene. He may have come around at some point, but the only evidence we have to identify the shooter is a witness whose testimony is of [an] eyewitness.

Edelen's counsel renewed his motion for a mistrial, arguing that an instruction to the jury to disregard the challenged testimony would be insufficient. The judge denied the renewed motion. The judge then instructed the jury as follows:

> Ladies and gentlemen, the last comment you heard from the detective that Mr. Pate may have picked out a photograph of Mr. Edelen, you should disregard that. It should have no impact at all on your deliberations in this case.

An out-of-court identification is admissible as an exception to the hearsay rule only if the declarant is available at trial for cross-examination. *In re L.D.O.*, 400 A.2d 1055, 1057 (D.C.1979); *cf. White v. Illinois*, — U.S. —, —–—, 112 S.Ct. 736, 740–43, 116 L.Ed.2d 848 (1992) (discussing confrontation claim). In this case, as in *United States v. Johnson*, 256 U.S.App.D.C. 65, 72, 802 F.2d 1459, 1466 (1986), the government elicited testimony which, "as the prosecution well knew or should have known, was not independently admissible."

Nevertheless, we agree with the government that the judge did not abuse his discretion in declining to declare a mistrial. A judge's decision to deny a motion for a mistrial will be disturbed only in "extreme situations threatening a miscarriage of justice." *Rambert, supra*, 602 A.2d at 1120 (citation omitted). This was not such an extreme case.

The judge intervened forcefully, *sua sponte*, before any defense objection was made, and promptly put an end to the improper examination. He instructed the jury, in no uncertain terms, to disregard Detective Smith's testimony regarding any identification of Edelen by Pate. As Justice Holmes, writing for the Court, put it eighty years ago in *Graham v. United States*, 231 U.S. 474, 481, 34 S.Ct. 148, 152, 58 L.Ed. 319 (1913), "[i]t would be absurd to upset a verdict upon a speculation that the jury did not do their duty and follow the instructions of the court." *Accord, Coates v. United States*, 558 A.2d 1148, 1150 (D.C.1989) (quoting *Graham*).

While there may be situations in which a direction to jurors to disregard what they have just heard may be akin to, and no easier to follow than, an instruction not to

think about a pink elephant, the judge reasonably concluded that this case did not present such a scenario. An objection might well have been sustained a few questions earlier if Edelen's attorney had interposed one. Even in the absence of an objection, the trial judge alertly stopped the examination in its tracks at a relatively early stage. Detective Smith never disclosed the purpose of the identification of Edelen by Pate. There was no indication that Pate witnessed the murder or saw Edelen commit it, and any reasonably intelligent juror would surely have noticed that the prosecution made no claim in its opening statement or at any time thereafter that any eyewitness could identify Edelen as the murderer. Especially in light of the judge's instruction, there is no basis for any speculation that the jurors thought that Pate had seen Edelen shoot Ms. Rogers. Considering the record as a whole, we discern no abuse of discretion.[8]

## IV.

■ Philippa (Pam) Williams, as the reader will recall, linked Edelen to a shotgun and to a green coat. A somewhat unruly witness,[9] Ms. Williams was impeached with her conviction for attempted possession of a controlled substance. She stated in that regard that "I pled guilty to it because I was tired of going to court, but I didn't have nothing. It was never in my hands." She insisted that "the judge made a deal with me," and that the prosecutor's copy of an exhibit reflecting her conviction was unsatisfactory,[10] but she ultimately acknowledged that "[t]hat is what they convicted me on; yeah."

Edelen's attorney also asked Ms. Williams whether she was "the same Phil-

ippa Williams that has a conviction from October of 1989 for concealing a weapon in Virginia." The question was based upon information provided to the defense by the prosecution, pursuant to *Lewis v. United States,* 408 A.2d 303 (D.C.1979), to the effect that Ms. Williams had a "concealment" conviction. Ms. Williams denied that she was that Philippa Williams, and also claimed (erroneously) that the social security number on the "rap sheet" was not hers. The prosecutor refused, rightly as it turned out, to stipulate with defense counsel that Ms. Williams had a conviction for concealing a weapon, and the judge suggested that the defense attempt to obtain a certified copy of the conviction. Edelen's counsel did so and discovered, contrary to his prior assumption, that Ms. Williams' conviction was for concealment of merchandise, rather than of a weapon.

By the time that the defense had obtained the certified copy, the prosecution had rested its case. Edelen's attorney asked for leave to re-call Ms. Williams as a defense witness in order to impeach her further, but the judge denied him leave to do so. Edelen contends that this refusal constituted prejudicial error. The government defends the judge's ruling.

We need not decide whether the judge's decision not to permit counsel to re-call Ms. Williams was erroneous. Even assuming, without deciding, that it was, we are satisfied that any error was harmless. The certified copy of Ms. Williams' Virginia conviction was available to the defense. It could have been introduced into evidence as a part of the defense case. D.C.Code § 14–305(c) (1989). If this had been done, then the jury would have learned of Ms. Williams' conviction and of her real or per-

---

8. Edelen argues that Detective Smith's testimony served to "communicate to the jury that the government was sponsoring Pate's innocence— that the vast governmental investigative resources led to the conclusion that appellant, and not Pate, was guilty." The proposition that the police and prosecutors believed that Edelen committed the murder, and that Pate did not, was surely obvious to any reasonable juror from the very fact that it was Edelen, and not Pate, who was on trial.

9. On the witness stand, Ms. Williams remarked that "I am tired of this, man ... I didn't want to come down here." A short time later, after the judge threatened her with a contempt citation, Ms. Williams told the judge: "You heard what I said, too. I'm getting the f--- out of here." The judge admonished the prosecutor to control his witness.

10. "Man, that's an old copy. See, I don't have no papers or nothing."

ceived lack of candor in responding to questions about it. Edelen's attorney could have pressed the point in closing argument. The defense, however, made no attempt to bring its new evidence to the attention of the jury.

Ms. Williams was cross-examined in considerable detail. She was impeached with a drug conviction. We are satisfied that, even if we assume that the judge erred in not allowing the defense to re-call Ms. Williams for the purpose of impeaching her, essentially the same point could have been made by the defense by introducing the certified copy. In light of the entire course of Ms. Williams' testimony, only minimal incremental damage to her credibility could have been inflicted by confronting her with the certified copy; substantially the same result was achievable by introducing the certified copy in evidence. Accordingly, the error, if any, was harmless. *See Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).

### V.

For the foregoing reasons, Edelen's convictions must be and each is hereby

*Affirmed.*