John P. DALEY, Appellant,

v.

UNITED STATES, Appellee.

Nos. 94–CF–1586 & 97–CO–890.

District of Columbia Court of Appeals.

Argued Sept. 3, 1998.

Decided Sept. 30, 1999.

Daniel K. Dorsey, Washington, DC, appointed by the court, for appellant.

Barbara J. Valliere, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney at the time the brief was filed, Wilma A. Lewis, United States Attorney, and John R. Fisher, Roy W. McLeese III, Patricia M. Haynes, and Mary–Patrice Brown, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, SCHWELB, Associate Judge, and KING, Senior Judge.*

KING, Senior Judge.

Charged with armed first-degree murder and assorted weapons offenses, John P. Daley was convicted on August 26, 1994, following a jury trial of one count each of armed voluntary manslaughter, possession of a firearm during a crime of violence, and carrying a pistol without a license.[1] He argues on appeal that the trial court abused its discretion by denying his motions for a "come-up" order, a continuance, and a bench warrant in his attempts to secure the presence of prospective defense witnesses, who had not appeared in court even though they had been subpoenaed. Daley claims that denial of these motions was an abuse of the trial court's discretion, and amounted to a denial of his Sixth Amendment right to compulsory process. We hold that the trial court did abuse its

---

\* *Judge* KING was an *Associate Judge, Retired,* of this court at the time of argument. His status changed to *Senior Judge* on November 23, 1998.

1. Armed voluntary manslaughter, as a lesser-included offense of armed first-degree murder (D.C.Code §§ 22–2401 & –3202 (1996 Repl. & 1998 Supp.)); possession of a firearm during a crime of violence (D.C.Code § 22–3204(b) (1996 Repl.)); carrying a pistol without a license (D.C.Code § 22–3204(a) (1996 Repl.)). Daley was sentenced to fifteen-years-to-life for the manslaughter conviction, five-to-fifteen years for the firearm possession conviction (to run consecutively to the manslaughter sentence), and one year for the unlicensed pistol conviction (to run concurrently with the other sentences).

discretion, and accordingly we reverse Daley's convictions.[2]

On the afternoon of June 3, 1993, appellant Daley, a barber at Walter Reed Army Medical Center, shot and killed his long-time acquaintance George Younger during a dispute over ownership of a car. Claiming self-defense, Daley testified that on that day Younger and Bobby Adams approached him in his barbershop and that, after heated discussion in a nearby hallway, Younger made a motion as if reaching for a gun. Daley claimed he heard a sound like a gunshot as he turned and ran back toward the doorway of the barbershop. When he reached the doorway, a friend, Specialist Garvin Brown, handed Daley a .380 pistol; Daley then, without aiming, fired up to seven shots in Younger's direction.

In contrast, government witnesses testified that Daley had been the aggressor during the shooting, that Brown did not hand Daley the pistol he used to shoot Younger, that Younger had carried no weapon, and that Daley had shot the wounded Younger in the head at close range as he lay on the floor. A medical examiner testified that Younger was shot four times, including once in the back and once in the head. No gun was found on or near Younger's body at the scene, nor was the .380 pistol which Daley used ever recovered.

On August 24, 1994, the final day of trial testimony, Daley sought to call as a witness James Johnson, a barber who worked with Daley and who was present on the day of the shooting.[3] According to an affidavit prepared several months later under circumstances discussed below, Johnson would testify that: he heard Younger threaten Daley just before the shooting; he saw Younger reach into his waistband for what Johnson thought was a gun; Johnson knew Brown owned a pistol; and Johnson saw Brown hand his pistol to Daley. Johnson had been subpoenaed and had appeared earlier in the case, but was not present in court on August 24. It was learned that Johnson had been arrested several days earlier on an unrelated charge, and counsel for Daley did not become aware of the arrest until the morning of August 24, when he was told that Johnson was in the custody of United States Marshals in the cellblock of the Superior Court.

Daley's counsel first asked the court for a "come-up" order, and then for a "brief extension" in order to secure Johnson's presence. Counsel stated that he could proffer to the court what testimony to expect, that Johnson was an "eyewitness"

2. Because the admissibility of three government photographs was challenged in the trial court and on appeal, and may be challenged again at retrial, we address this issue briefly. Specifically, Daley challenges the admission of an arrest photo, an autopsy photo, and a photo of Daley with Bobby Adams, who accompanied decedent Younger to Walter Reed Army Medical Center on the day of the shooting. At oral argument, Daley withdrew his challenge to the arrest photo, but maintained that the admission of the other two photos was improper. We have reviewed the photos and the context in which they were presented, and find no abuse of discretion by the trial court in their admission. *See Gethers v. United States*, 684 A.2d 1266, 1273 (D.C.1996), *cert. denied*, 520 U.S. 1180, 117 S.Ct. 1458, 137 L.Ed.2d 562 (1997). In light of our disposition of this appeal, there is no need to resolve the other issues raised in Daley's appeal. Upon any retrial, the trial court will have to consider the evidence in the context in which offered.

3. At the same time Daley also sought a bench warrant for Tom Hopkins, a Virginia pawn shop owner, who had been subpoenaed but had not appeared. According to Daley, Hopkins would testify that, several months before the incident, he had sold Specialist Brown a .380 pistol like the one used in the shooting. Brown had left military service and could not be located to testify on this point. The trial court denied the request for the warrant, stating that the proposed testimony was irrelevant and that "[t]his case is going to conclude." We do not decide whether this action, standing alone, would be an abuse of discretion. We note, however, that the testimony of this witness, as with the testimony of Johnson, would have corroborated some aspects of Daley's testimony.

and "one of the barbers [who] witnessed the facts of this case." The trial court denied both motions without hearing the proffer, stating that the court was "going forward and finishing this case now."[4] Daley called only one more witness and then rested. Closing arguments and instructions occurred the next morning, and the jury reached its verdict the day after that.

On appeal, Daley argues that denial of these motions was an abuse of discretion by the trial court, and that not allowing Daley to call Johnson as a witness amounted to a denial of his Sixth Amendment right to compulsory process. Denial of a request for a continuance and refusal to compel the appearance of a witness are reviewed for abuse of discretion. *Edelen v. United States,* 627 A.2d 968, 972 (D.C. 1993); *see also Howard v. United States,* 656 A.2d 1106, 1117–18 (D.C.1995). In exercising its discretion, the trial court must ensure that its actions are not "so arbitrary as to deny [the defendant] due process." *O'Connor v. United States,* 399 A.2d 21, 28 (D.C.1979) (citing *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964)).

Relevant factors in determining whether there has been an abuse of discretion include the reasons for the request for a continuance, the prejudice resulting from its denial, the party's diligence in seeking relief, any lack of good faith, and prejudice to the opposing party. *Hairston v. Gennet,* 501 A.2d 1265, 1268 (D.C.1985); *Joyner v. Jonathan Woodner Co.,* 479 A.2d 308, 312 (D.C.1984); *Harris v. Akindulureni,* 342 A.2d 684, 686–87 (D.C.1975). Specifically, the party seeking a continuance to secure a witness

> must establish (1) who the missing witness is, (2) what the witness' testimony would be, (3) the relevance and competence of that testimony, (4) that the witness could probably be obtained if the continuance were granted, and (5) that the party seeking the continuance has exercised due diligence in trying to locate the witness.

*Bedney v. United States,* 684 A.2d 759, 766 (D.C.1996) (citing *Kimes v. United States,* 569 A.2d 104, 114 (D.C.1989)). Even if these standards are met, a continuance is not necessarily mandated—the continuance must be " 'reasonably necessary for a just determination of the cause.' " *Id.* (quoting *O'Connor, supra,* 399 A.2d at 28).

Applying these factors, we are satisfied from this record that Daley established entitlement to at least a brief continuance to secure the presence of Johnson as a witness. Accordingly, the trial court's denial of that request was an erroneous exercise of discretion. *See Johnson v. United States,* 398 A.2d 354 (D.C.1979). For example, Daley told the court that Johnson was a former co-worker and an

---

4. The exchange between Daley's attorney and the trial judge concerning Johnson follows in its entirety:

> DEFENSE COUNSEL: Your Honor, there is one other request. There is another person that has been under subpoena every time this trial date has been up, including this time. I subpoenaed both [Johnson and Hopkins]. I had just talked to the witness shortly before the trial started this time. I could not locate him. After the trial started, he never showed up. I found out today he's in custody. I don't know what charge or anything and I don't know when he was locked up. It must have been just within the last day or two or three. We couldn't find him because he had been locked up, and I didn't know that I have his name.

> He's one of the barbers, and he witnessed the facts of this case. I could proffer to the court what I expect.
> THE COURT: What are you asking for?
> DEFENSE COUNSEL: I would ask for a come-up for that individual. I don't know his D.C.D.C. number because I didn't know he was locked up.
> THE COURT: Motion to request [sic] is denied. We are going forward and finishing this case now.
> DEFENSE COUNSEL: Okay. He is an eyewitness. We would ask for a—just a brief extension to get him in to testify as a witness.
> THE COURT: [ ] This is a 1993 case. This is August of 1994. I will say no more. Bring in the jury.

eyewitness to the shooting. This was a clear indication to the court not only of the missing witness' identity, but also of the subject matter of Johnson's proposed testimony, and of that testimony's relevance and competence. Daley attempted to proffer to the court what he expected Johnson's testimony would be, but the trial judge did not permit him to do so. Given that Johnson was apparently in custody within the Superior Court building itself, it is likely that his presence could have been obtained with minimal delay to the proceedings if the continuance had been granted. Finally, the record shows that Daley had subpoenaed Johnson to appear, and had been in contact with him shortly before trial began. The record also shows that Johnson was detained only a few days before his expected testimony. Although the trial court made no finding on this point, Daley's inability to produce Johnson on the day in question would not appear to be due to a lack of diligence on his part.

In the final analysis, however, our determination turns on the question of prejudice. Ordinarily, counsel is expected to provide a proffer of the expected testimony when requesting a delay. If the proposed testimony is not relevant or would make no difference in the outcome, a denial of a continuance is not ordinarily an abuse of discretion. *Martin v. United States,* 606 A.2d 120, 135 (D.C.1991). Here, however, counsel was not permitted to make a proffer. The substance of Johnson's proposed testimony was supplied, however, by affidavit from the witness in a post-trial motions proceeding.[5]

Had the trial court permitted counsel to make a proffer, it might have learned that Johnson's testimony would corroborate Daley's version of events. The jury could

have found such testimony relevant and even exonerating. *See Wilson v. United States,* 673 A.2d 670, 672–73 (D.C.1996). The same is true of the testimony of the pawn shop owner. The denial of Daley's motions prejudiced his case to the extent it deprived him of the opportunity to present testimony corroborating his own testimony and contradicting that of government witnesses. Moreover, the delay in the proceedings entailed by granting the continuance to produce the witness would have caused little, if any, prejudice to the government. Although the government argues that it presented significant opposing evidence and that Johnson's testimony could be discredited and would not have affected the outcome of the trial, we cannot say that his testimony would not have aided Daley's case. That testimony therefore was reasonably necessary to enable Daley to present his case. *See Bedney, supra,* 684 A.2d at 766.

For these reasons, we conclude that the trial court abused its discretion in denying these motions. *See Johnson, supra.* Accordingly, we reverse Daley's convictions in No. 94–CF–1586, and remand the case for further proceedings.[6]

*So ordered.*

SCHWELB, Associate Judge, concurring.

I join the court's opinion, but add a few words to emphasize that even the wide latitude accorded to the trial judge in passing on a motion for a continuance was transgressed in this case.

The dialogue between the trial judge and Daley's attorney quoted in footnote 4 to Judge King's opinion reveals beyond

---

5. The affidavit was not part of the original record before the trial court, and for that reason the government has moved that it be struck from the record on appeal. Because we conclude that the trial court's refusal to allow the proffer and to permit the defense to present the testimony of Johnson was reversible error, we will not consider the affidavit. Therefore, the government's motion to strike

the affidavit from the record is denied as moot.

6. In light of our disposition, we dismiss as moot Daley's appeal No. 97–CO–890 from an order denying without a hearing Daley's post-trial motion to set aside his convictions.

any doubt that the judge was concerned solely about expediting the trial, to the exclusion of all other considerations. Indeed, the judge summarily dismissed counsel's attempt to proffer what the barber's testimony would be, even though, as the court points out, any delays in producing the witness would probably have been minimal. Such "a rigid insistence by the court upon expedition of trial in the face of a justifiable request for delay can render the right to defend an empty formality." *Edelen v. United States,* 627 A.2d 968, 972 n. 7 (D.C.1993) (quoting *O'Connor v. United States,* 399 A.2d 21, 28 (D.C.1979)).

The right to call witnesses in one's own behalf is a "fundamental element of due process of law." *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). Where a witness is temporarily unavailable and the defendant seeks a continuance, "the fundamental character of that right is a major factor to be considered in the balancing process." *Martin v. United States,* 606 A.2d 120, 127 (D.C. 1991) (citation omitted). The judge's refusal even to entertain defense counsel's' proffer, or to consider the likely brevity of any delay, cannot be reconciled with these authorities.